FORD MOTOR *et al.* v. WAGONER.

(*Nashville,* December Term, 1945.)

Opinion filed March 2, 1946.

Rehearing denied, May 4, 1946.

JAY G. STEPHENSON and J. G. LACKEY, both of Nashville, for plaintiff.

ARMISTEAD, WALLER, DAVIS & LANSDEN and HUME, HOWARD, DAVIS & GALE, all of Nashville, for defendants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action to recover for personal injuries suffered by the driver of a Ford automobile, brought against the manufacturer and its local agency, charging that the proximate cause of the accident was a defect in the catch intended to hold in position the hood of the car, as the result of which defect the hood came loose and sprang up and so obscured the vision of the driver that she lost control of the car. In one count, it was alleged that the manufacturer knew, or should have known, of this defect and was, therefore, negligent in the manufacture and putting of the car out for sale to the public. In another count, it was alleged that the defendant manufacturer knew of the defect and was, therefore, in effect, guilty of fraud.

At the close of the proof the trial judge sustained a motion by the Volunteer Company, the "local agency," for peremptory instructions. While he overruled this motion by the Ford Company, in submitting the case to the jury he withdrew from their consideration the first count. The jury found for the defendants. The court of appeals reversed and remanded for a trial by jury of the issue of negligence under the first count. We granted *certiorari*.

Upon the trial the proof showed that, shortly after this model was put upon the market, the attention of the defendant Ford Company was called to the fact that when cars of this model were subjected to a severe jar or jolt, and the catch provided was not securely fastened, the hood, coming loose, might rise on its springs and obstruct the vision of the driver. Ford thereupon at once provided and distributed to all dealers an auxiliary catch, with instructions to install these catches on all cars of that model without charge, as a precaution. It appeals that these catches and instructions were sent to the Nashville agencies.

The car here involved was first sold to one Nashville agency and by that agency to another, the defendant Volunteer Motor Company. The Volunteer Company sold the car to one of its then salesmen, Holly Norman, who used it, as a demonstrator. After owning and using the car for several months and driving it some 10,000 miles, and after severing his connection with Volunteer Company, so that his relationship as agent of the defendants no longer existed, Norman sold it to a Nashville resident, R. B. Baxendale. It was while Norman owned the car that these safety catches were received by the Volunteer Company, of which Norman was an employee, and he was informed about it and one was tendered to him, which he declined because he did not regard it necessary.

The accident occurred some time later, after the car had been driven by Baxendale a distance which is not shown, when he and a party of five friends were returning after midnight from Columbia, Tennessee, where they had gone to attend a dance, the car at that time being driven by the plaintiff in this case, a lady guest of Baxendale, who testified that while meeting and passing a

truck, moving, as was the car, at a speed of fifty miles an hour, the hood became loose, rose up and obscured her vision, that one of the passengers leaned forward from the rear seat and seized the wheel and the car went off the road, was wrecked and plaintiff injured.

The court of appeals held that the trial judge was in error in taking the first count, which charged simple negligence, from the consideration of the jury; that there was some material evidence of negligence of the manufacturer which presented a jury question, and the court being of opinion that the rule of actionable liability of a manufacturer of medicines, foods and beverages to a third party, announced in *Boyd* v. *Coca Cola Bottling Works*, 132 Tenn. 23, 177 S. W. 80, recently approved in *Coca Cola Bottling Works* v. *Sullivan*, 178 Tenn. 405, 158 S. W. (2d) 721, was applicable to manufacturers of automobiles. This interesting question is dealt with in the opinion with that care and research which is characteristic of the learned writer.

Without discussion of the correctness of this extension to automobiles of the rule allowing recovery against manufacturers by subsequent purchasers, petitioners here rely chiefly upon the defense that the causal connection was broken when the provision made by the defendant to cure the alleged defect subsequent to the original manufacture of the machines, as above described, was rejected by Norman, into whose ownership and control it had passed, and that the independent intervening act of Norman in failing and refusing to attach and make use of the auxiliary, or supplemental safety catch when offered to him and neglecting to advise his vendee was the proximate cause of the accident.

As before stated, the Ford Company had sent these safety catches to its Nashville agencies, with the positive

instructions above recited, and the proof is that one of them was tendered to Norman while he was the owner and user of this car, but that, in the exercise of his own judgment that such an appliance was unnecessary, based on his experience with the car, he refused to make use of it and thereafter sold the car to Baxendale.

Conceding, as held by the court of appeals, the continuing liability of a manufacturer of automobiles to successive purchasers for damages resulting from defects chargeable to negligence of the manufacturer, and conceding, but not deciding, that there is material evidence in the instant case of such negligence, and, also, that this defect was the cause of this accident, and that the plaintiff is free from contributory neligence, all of which are controverted issues, we consider this question which, if answered in the affirmative, is determinative of this case: Does the evidence establish that Norman, the intermediary vendor, was put upon such notice of the alleged defect and the offer by the defendant manufacturer of an adequate protective remedy, which he rejected, as to bring into play the rule which fastens the charge of *conscious* intervening negligence upon an intermediate vendor and relieves the manufacturer of liability? What is this rule of law?

In Beven on Negligence, a leading text book on this subject, recognized as a classic, in the chapter dealing with "Limits of Liability" (Volume I, Fourth Ed., pp. 42, 44), and discussing legal obligation to successive vendees of a compounder of drugs, or manufacturer of articles, for sale to the public, dangerous to health, or in their use otherwise, thus lays down a generally recognized limitation upon liability saying (p. 42): "A person who *knowing the perilous character* of a compound [equally applicable, clearly, to other instrumentalities

fraught with danger] which he has bought, yet hands on the compound to a third person, *destroys, by his negligent act, the causal connection between the first person concerned and the ultimate injury sustained."* (Italics inserted.)

■ And, again, on p. 44, it is said:

"The principle that to fix liability for injuries brought about through a complicated state of facts, the last conscious agency must be sought; and the consideration that if, between the agency setting at work the mischief and the actual mischief done, there intervenes a conscious agency, which might or should have averted mischief, the original wrongdoer ceases to be liable, afford the clues for the unravelling the cases."

The principle which governs and limits liability in the instant case could hardly be more clearly stated than in the foregoing paragraphs. Norman plainly became, under the proof, an intervening "conscious agency, which might or should have averted mischief," and, therefore, the alleged "original wrongdoer ceased to be liable." He "destroyed by his negligent act" of omission "the causal conection between the first person concerned [here Ford Company] and the ultimate injury sustained."

The rule thus stated is so obviously well founded in principle and reason that it is not necessary to lengthen this opinion by extended references to other authorities. However, holdings of this Court are in accord. In the recent case of *Stafford* v. *Consolidated Bus Lines*, 179 Tenn. 185, 164 S. W. (2d) 15, Mr. Justice McKinney reviewed our cases, including *Moody* v. *Gulf Refining Co.*, 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243, and approved recognition therein of the acquitting effect of an independent intervening cause upon the liability of the orig-

inal wrongdoer. He quotes from the *Moody Case* the following:

"But, even if it be conceded that the defendant was guilty of negligence in the manner in which it kept its premises and the manner in which it was unloading the gasoline in question, still we are of the opinion that such negligence was not the direct and proximate cause of the fire which destroyed the property of plaintiffs, but that said fire was the direct and proximate result of the independent intervening act of the boys in throwing lighted matches into the gasoline during the absence of defendant's employe, *and that this act on the part of said boys was not such as could have been reasonably anticipated* by defendant's employe," 179 Tenn. at page 193, 164 S. W. (2d) at page 18.

We have italicised language in the foregoing quotation which gives recognition to a limitation which we find to be generally laid upon the principle which relieves from liability an antecedent wrongdoer. The intervening act of even an independent conscious agency will not exculpate the original wrongdoer, or an antecedent vendor, unless it appears, as it did in the *Moody Case,* and clearly does here, that the negligent intervening act, of commission in the one case, of omission in the other, could not have been reasonably anticipated. Certainly, Ford Company could not have reasonably anticipated the conduct of Norman in rejecting the safety catch. As expressed by FAW, J., in *Nashville, C. & St. L. Ry.* v. *Harrell,* 21 Tenn. App. 353, 364, 110 S. W. (2d) 1032, 1039. "The chance that such a thing would happen was so remote as not to come within the scope of reasonable apprehension."

In contrast to the *Moody Case* is *Kentucky Independent Oil Co.* v. *Schnitzler,* 208 Ky. 507, 271 S. W. 570, reported

in 39 A. L. R. 979 (cited by the court of appeals): The court found that the Oil Company, the antecedent wrong-doer, should have reasonably anticipated that the inter-vening act would nor might occur and it was held on this ground that the original negligent wrongdoer was not relieved of liability for the resultant injury. And see Note in 17 A. L. R. 672, 698, and 24 R. C. L. 519.

Text book authorities concur in recognizing the general rule, with its limitations, which we have stated. "Where the intervening agency was of such a nature that it could not reasonably have been anticipated, such agency be-comes the proximate cause, even though the injury would not have occurred except for the original negligence." 45 C. J., p. 935, sec. 494, cited cases from numerous juris-dictions, without dissent. So, in 38 Am. Jur. at page 729, 730, it is said that, "it can be stated as a general rule that ordinarily the intervention of a negligent act as the independent and efficient cause of an injury operates to relieve one who has been guilty of prior negligence from responsibility for the injury." Elsewhere this authority notes the conditions upon this general rule, (1) that the intervening actor shall be a conscious agency and (2) that his conduct could not have been reasonably antici-pated. Discussing this phase of the question, this text reads (p. 731): "One who acts negligently is not bound necessarily to anticipate that another person will be neg-ligent after the latter has discovered the danger arising from the former's negligence. The first actor, however, is not permitted to assume that the second actor will discover the danger caused by the first actor's negligence. Accordingly, where the second actor, after having beome aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in re-spect of the dangerous situation and thereby brings about

an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident.'' And see in the same volume, on pages 726, 727, in Paragraph 70, under subtitle ''Causes Anticipated or Reasonably Foreseeable,'' a fuller discussion of the subject. In Street's Foundations of Legal Liability'' (dedicated to that distinguished Tennessee lawyer and Dean of Vanderbilt University Law School, Honorable Thomas H. Malone), Volume I, page 120, the learned author thus tersely states the doctrine of intervening cause:

''Damage cannot be áttributed to a given negligent act as its proximate cause when it appears that subsequent to that negligence, a new, independent, and unexpected factor intervenes which itself appears to be the natural and real occasion of the mischief. The intervening cause breaks the chain of legal causation and relieves the original negligent actor of responsibility.''

We thus find the pertinent rule to be one of continuing liability of the manufacturer to successive purchasers, subject to be destroyed, however, by the intervening act of an agency which is (1) independent, (2) efficient, (3) conscious and (4) not reasonably to have been anticipated.

As we understand the opinion of the court of appeals, while not apparently questioning the foregoing legal principles, it holds this defense was not established by the proof, on the theory that, while the safety catch had been tendered to Norman, and he rejected it for the reasons above mentioned, he was not sufficiently advised of the risk incident to the use of the car without this precautionary device, that he was in ignorance of the danger incident, and not, therefore, a conscious agency.

■ In our opinion, the court of appeals has put too heavy a burden upon the defendants in this regard. When, as Norman testifies, he "knew about it," and it was offered to him, he, of course, knew the purpose of it and he knowingly assumed any danger incident to his failure to make use of it. That Norman was a salesman of cars, experienced in handling such machines, is a circumstance for consideration, which his employer, Volunteer Company, agent of the Ford Company, his vendor, was entitled to give great weight in determining to what extent it was called upon to go in impressing upon him the necessity for installing this provided and proffered auxiliary catch. It would seem that the Volunteer Company, acting through other of its employees, was justified in assuming that this salesman knew as much or more on the subject than any one else connected with the Company. He was, of course, in and about the premises where these cars were being handled and equipped, engaged in constant inspection of them in connection with the sale and delivery of them. It is common knowledge that it is the automobile salesman of a sales agency who makes delivery of the cars as sold and accompanies the purchaser on initial and experimental trips, giving instructions as to various parts and fixtures and details of operation.

Now with this background of knowledge and experience, Norman testified that he was in the automobile business, connected at the time of testifying with the Hupmobile Company in Nashville. That he purchased the Ford car involved herein in November, 1938, from defendant Volunteer Motor Company and while he owned it drove it "about 10,000 miles," sometimes at as high speed as it would go, up to 100 miles an hour; that the hood never flew up and he never had any trouble with its locking;

that he never attached one of the auxiliary latches for the reason, he "didn't think it was necessary"; that he sold Baxendale a number of cars and sold him this one; that this sale was made after he had quit the Volunteer Company and had no connection with it and was working for a different Company. He was asked and answered: "Q. And even though you knew about this auxiliary catch there when you had the car and were driving it that 10,000 miles, you didn't want one on your Ford and for that reason you didn't want one put on? A. That is right."

He further testified that he told Mr. Baxendale the car was "in perfect repair." But that it did not have this catch on it; that Mr. Baxendale did not ask him about it and he did not mention it, this being consistent with his preceding statement that he considered it an unnecessary attachment.

We do not think, with all due deference to the court of appeals, it can be maintained that Norman, on the facts of this case, was not a *conscious* agency. As bearing on the knowledge or consciousness of Norman, we are constrained to give compelling weight, as the court of appeals seems not to have done, to Norman's avocation, connections, experience, and specific related duties, to which reference has been made. Also, the distinction must be regarded between the receipt of a warning and adoption of it; getting a notice and acting upon it. It would seem that the divergence in our conclusions is attributable largely to a difference in appreciation of this distinction.

Suppose the case was one in which Norman had suffered the injury. Is it conceivable that he could have maintained an action against his vendor under the circumstances? Surely he would have been held to have

assumed the risk. His affirmative, informed action in rejecting the proffered safety catch brought into play the maxim *volenti non fit injuria,* said to lie at the foundation of the doctrine of assumption of risk, and meaning that one "who consents to the doing of an act cannot maintain an action in respect of the damage which results." Volume I, Street's Foundations of Legal Liability, p. 162. On the same grounds and for like reasons he became a "conscious" agency, which, intervening, "destroys, by his negligent act" of omission "the causal connection between the first person concerned," Ford Company, "and the ultimate injury sustained" by the plaintiff herein.

We do not overlook the question whether or not we have presented on this point a case for submission to a jury. The rule is, as thus stated in *Stanford* v. *Consolidated Bus Lines, Inc., supra*: "Although ordinarily a question for the jury" [quoting from *Chattanooga, etc., Co.* v. *Hodges,* 109 Tenn. 331, 70 S. W. 616, 60 L. R. A. 459, 97 Am. St. Rep. 844] "'where the facts are fairly incontrovertible the question of proximate or intervening cause is for the court'; and it was so held in the later case of *Moody* v. *Gulf Refining Co.," supra.* As we have before shown, the facts touching the notice to Norman are uncontroverted, and we are of opinion that they do not leave open room for any reasonable deduction other than that he was consciously on notice of the defect and knowingly rejected the offered remedy.

In this view, which concedes for all pertinent purposes, the negligence of the defendant Motor Company, that the alleged defect caused the accident and that the plaintiff was free from contributory negligence, all of which points are controverted, there can be no recovery against either of the defendants and the remand decreed

for submission to a jury of the question of the defendant's negligence is uncalled for. It results that the decree of the court of appeals must be reversed and the suit dismissed.

OPINION ON PETITION TO REHEAR.

MR. JUSTICE CHAMBLISS delivered an opinion on petition to rehear.

A commendably brief and direct petition to rehear is presented. It is asserted, with perhaps unnecessarily dogmatic assuredness, that settled rules governing jury trials have been "overlooked" and disregarded. While the petition can hardly be said to meet the rule requirements of new argument and authorities, its earnestness induces this brief response.

It is erroneously assumed that the determinative issue of Norman's intervening agency was decided on "inferences" only and that the court has adopted these inferences which are unfavorable to the plaintiff, contrary to the rule. The premises of this argument are wanting. The opinion of the court—not of one member of it, as improperly treated by petitioner—was not rested on inferences, but upon direct and undisputed testimony, not only that of Norman, as erroneously assumed, but of others which clearly showed that Norman was an employee of such a character, with such duties and responsibilities as to render it inescapable that he was advised and informed concerning the furnishing of this auxiliary safety catch, the necessity for it and its purpose. This we emphasized in the opinion as a material fact overlooked by the Court of Appeals. It was with this supporting background of circumstantial evidence that we weighed the testimony of Norman that he "knew about this auxiliary catch", and that the reason he did not put one on his car was because he did not want it there.

The fact could hardly be more clearly proven that he was "conscious" of the situation and conditions obtaining. "Conscious" means knowing. When knowledge is shown to have been necessarily brought home to one and he himself testifies that he "knew about it" there is no room left for inference as to his knowledge.

This question was carefully considered and discussed in detail and our views fully set forth in the opinion and we can do no better than refer petitioner to what has been there said in support of our settled judgment.

Petitioner challenges our acceptance of the testimony of witness Norman and argues that this testimony was contradicted by that of witness Baxendale, for the plaintiff, with respect to the number of miles the car had been driven by Norman, as indicated by the speedometer, before its sale to Baxendale. Conceding, but not agreeing, that this apparent discrepancy should be resolved in favor of Baxendale for the reasons assigned, the discrepancy is not with respect to a matter material to the decision and petitioner is mistaken in assuming that the court so considered it.

It is also argued that an unfavorable "inference" should have been given effect against the defendant on the theory that the defendant failed to interrogate this witness about facts peculiarly within his knowledge and material to the defense. While it is true that a more exhaustive examination might well have been made of this witness, we are of opinion, as already indicated, that the essential and material facts of his connection and of his knowledge were developed, and there is no reason to assume that further examination would have disclosed any facts or circumstances tending to disprove that to which he had testified.

In the opening paragraph of the petition it is said that "Petitioner realizes that courts do not like to have petitions to rehear filed"; also, that "The Court being human does make errors," etc. While readily conceding the truth of this second observation, it must be apparent to counsel that laborious consideration has been given this case and that the best judgment of this "human" court has been bestowed upon it. It is not possible for us to do more, or always to satisfy counsel. But, if it is intended to imply by the first quoted observation that the court receives petitions to rehear, for which provision is expressly made by our rules, with impatience and any degree of resentment, the quoted comment is without foundation.

The petition is dismissed.