# BRETT v. CITY OF MEMPHIS et al.—232 S. W. (2d) 360.

At Jackson.   June 16, 1949.

Rehearing denied July 20, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

W. Wright Mitchell and Robert M. Nelson, both of Memphis, for plaintiff in error.

Charles C. Crabtree and Wesley Harvell, both of Memphis, for defendant in error.

SWEPSTON, J. This is an appeal in error by plaintiff from the granting of a peremptory instruction in favor of defendant, the Memphis Light, Gas & Water Division at the close of plaintiff's proof.

The suit was filed by Julius C. Brett for the benefit of his insurer Pearl Assurance Company, Ltd., which paid him his damages arising out of an explosion of gas supplied by defendant whereby Brett's residence was damaged.

The trial court held that the negligence of defendant, if any, was not the proximate cause by reason of intervening, efficient acts of the plaintiff and his contractor.

In order to understand the assignment of error it is necessary to state the evidence deemed to be material.

Plaintiff was having a residence for his own use built by a contractor. Before it was completed and some

unstated time before February 7, 1946, he made a verbal contract with defendant to supply cooking and heating gas on a monthly flat rate basis, no meters being then available.

On said above date he called defendant to have it turn on the gas at the valve or cock just outside the house.

When defendant went out to the house its inspection and test of the gas pipes in the house revealed an opening in the pipes. The valve was left closed tight but not sealed or padlocked and word was left, which plaintiff received, that he would have to have the opening capped before they could turn on the gas supply. Plaintiff instructed his heating contractor Shook, to attend to this matter. Later he called Shook who informed him that he had gone out and closed the opening and had so reported to the defendant Utility; but in fact the opening had not been closed.

In the interval between these two calls of plaintiff to Shook, he received from the defendant a letter dated February 11th, 1946 which is as follows:

"Mr. Julius C. Brett

"2576 LaRose

"Memphis, Tennessee

"Dear Mr. Brett:

"This will confirm the verbal agreement made by you and our House Heating Department relative to serving your home with natural gas on a monthly flat rate basis until we are able to obtain shipments of gas meters.

"The cost for this monthly flat rate charge has been arrived at after a careful inspection of the premises and the various types of equipment installed, by an experienced gas engineer, and is based on established records of the gas industry over years of operation.

"We are herewith setting forth the cost to you for service on a flat rate basis, predicated on the use of the following gas equipment:

1—range; 1—water heater; 3—floor furnaces

Initial bill will be from turn-on to February 13, 1946

Amount—$4.51

Future bills until meter is installed will be—

| | | | |
|---|---|---|---|
| March — | $10.51 | July — | $3.02 |
| April — | 6.99 | August — | 3.02 |
| May — | 4.61 | September — | 3.02 |
| June — | 3.02 | | |

"These charges will be made on your regular monthly service bill.

"The delivery of unmetered gas is a radical departure from long established policies, and it is being done to render you necessary gas service under difficult conditions. It is our intention to install a gas meter on your premises as soon as we are in a position to do so.

"Yours very truly,

"(s)  R. S. Diggs,

"Director,

"Commercial Department."

The workman doing the finishing of the floors had told plaintiff he could do a better job if there were heat in the house. On February 16 plaintiff having been told by Shook that the pipe opening was closed and having received the letter from the defendant a day or two before plaintiff thought, he says, that the defendant meant that the "service was ready to turn on", so that when the floor man called him to come out and turn on the gas, he did not call the defendant, but went out to the house himself taking with him his daughter, his

grandbaby, and another child all of whom went into the house.

Plaintiff first tried to turn on the gas inside the house but found that no gas was coming through the line. He then went next door, borrowed a wrench and turned the valve outside the house, went inside and succeeded in lighting the bathroom heater but could not get the pilot light on the floor furnace to light. About a half hour had elapsed since the outside valve was turned on, so he then decided there was something wrong with the floor furnace and that he should go see the heating contractor.

At that instant the explosion occurred, severely damaging the structure but most fortunately none of the persons present.

The evidence further shows that this outside valve or cock is so constructed that when the gas supply is to be cut off, a quarter turn of the valve seat does it and leaves an eye on the revolvable part to coincide with an eye on the rigid part, through which eyes a lock or wire may be inserted.

There is evidence that it is an invariable custom here to padlock those eyes and that it is generally understood in the trade that if the valve is not so locked, it is a sign that it is all right for any one to turn on the gas supply.

It appears that plaintiff is not engaged in that trade, and is not conversant with gas fittings and equipment. It is not shown that he was aware of the above stated custom of the trade. Plaintiff testified that he knew better than to turn on the valve, if there was an open pipe in the house.

Plaintiff's assignment of error raises three questions:

(1) That it was for the jury to determine whether defendant was guilty of proximate negligence in failing to lock the valve and in negligently sending the letter of February 11 before it had completed the inspection of the house which led plaintiff to believe it was safe for him to use the gas for which he was being billed up to February 13;

(2) It was for the jury to determine whether plaintiff was guilty of intervening proximate negligence under the circumstances, since the negligence of defendant was such that defendant should have anticipated the thing which actually occurred as a natural and probable result of such negligence, especially since the plaintiff was not conscious of the opening in the house pipe because he thought it had been closed;

.(3) It was for the jury to say whether plaintiff was guilty of *any* contributory negligence under the circumstances.

Counsel have cited a number of cases from other jurisdictions appertaining to gas explosions in buildings. On account of factual variations and differences from the above stated facts we do not regard any of them as being "spotted cow cases" or as "covering like a blanket".

We think we need go no farther for a perfect analogy in substance and principle than the case of Ford Motor Co. et al. v. Wagoner, 183 Tenn. 392, 192 S. W. (2d) 840, 852, 164 A. L. R. 364.

Irrespective of the question of contributory negligence of plaintiff, there can be no doubt that the action of Shook, who was called on by plaintiff to cap the pipe from which the gas was known, after the defendant's initial inspection on February 7, 1946, to be escaping,

in failing to cap it and yet stating that he had capped it was an intervening, independent, efficient cause by a conscious agency, not reasonably to have been anticipated by defendant.

Shook's conduct, on this record as made, is reprehensible to say the least. Plaintiff testified that after the explosion the firemen found that the identical opening was still uncapped. Yet Shook informed the plaintiff beforehand that he had gone out there and fixed it and had so reported to defendant. Shook had all the knowledge necessary of the defect and the dangers inherent and potential; he knew that the turning on of the gas again was entirely dependent on the closing of this particular pipe end. No more conscious and independent agency, factor, or medium can be conceived of.

Whatever be the exact relationship between him and the plaintiff he was in no way connected with defendant.

How could it be reasonably anticipated by the defendant, or for that matter by any mature person, that such conduct would occur in the face of a known danger that Shook had been expressly employed and called on by plaintiff to obviate?

It presents a much stronger case than the mistake in judgment of Norman in the above cited case.

Entertaining this view, we see no need for further discussion of the rule of intervening proximate cause so ably presented in that case.

This being determinative of the case, there is no need to discuss negligence of defendant and contributory negligence of the plaintiff.

The defendant is relieved of liability and the peremptory·instruction in its favor was correctly given and is .affirmed with costs against appellant.

Anderson, P. J., and Baptist, J., concur.

## On Petition to Rehear.

SWEPSTON, J. A petition to rehear has been filed in which it is said (1) that the Court decided the case on a question not raised in the pleadings, briefs, or oral argument, (2) that the action of Shook, the plumber, in stating to plaintiff that he had closed the opening in the gas pipes and had so notified the defendant gas company was not a *conscious* act because, it is said, the record is silent as to whether there was more than one opening and because the plaintiff knows "dehors the record" there were two openings and that Shook closed one of them, and (3) that Shook's conduct was such as should have been reasonably anticipated by defendant, when it failed to lock the outside cut-off valve.

As to (1) above, it could hardly be said that this Court decided the case on a theory not raised by the parties in the trial or in the briefs on appeal, that is, an independent intervening proximate cause. See remarks of the trial Judge in ruling on the directed verdict, R. 80.

The only difference in respective treatments of the question is that the trial Judge considered the act of Shook along with the act of his employer, the plaintiff, and held in substance that the latter was bound by the act of the former and that the conduct of both was an intervening proximate cause.

We did not find it necessary to discuss the ruling on respondeat superior. We simply held that Shook was in no way connected with defendants; that irrespective of the nature of Shook's connection with plaintiff, whether that of employer and employee or independent contractor, Shook's conduct was an intervening proximate cause such as would relieve the defendants.

Plaintiff's counsel concedes that if the directed verdict is sustainable on any theory, it was properly granted.

As to (2) above, we cannot consider what counsel states to exist dehors the record. From the plaintiff's testimony only one inference can be drawn—that there was only one opening and that Shook's statement to plaintiff that he had capped it was found to be false. If there were two openings and Shook capped only one, he should have been called by plaintiff as a witness.

Therefore, we can only find that Shook was a conscious actor.

In this connection counsel argues that to be a conscious act it must be that the actor knew, or should have known at the time, that his conduct would set in motion the chain of events leading to the ultimate injury or damage.

We think this is incorrect. The question is covered in Ford Motor Company v. Wagoner, 183 Tenn. 392, at page 401, 192 S. W. (2d) 840, 844, 852, 164 A. L. R. 364, as follows:

"As we understand the opinion of the court of appeals, while not apparently questioning the foregoing legal principles, it holds this defense was not established by the proof, on the theory that, while the safety catch had been tendered to Norman, and he rejected it for the reasons above mentioned, he was not sufficiently advised of the risk incident to the use of the car without this precautionary device, that he was in ignorance of the danger incident, and not, therefore, a conscious agency.

"In our opinion, the court of appeals has put too heavy a burden upon the defendants in this regard. When, as Norman testifies, he 'knew about it', and it was offered to him, he, of course, knew the purpose of it and he

knowingly assumed any danger incident to his failure to make use of it.''

He was, therefore, held to be a conscious agency.

As to (3) above, we think no further discussion is necessary.

We, therefore, adhere to our original conclusions and disallow the petition to rehear.

Anderson, P. J., and Baptist, J., concur.