## LEVITAN v. BANNIZA.—236 S. W. (2d) 90.

Middle Section. November 3, 1950.

Petition for Certiorari denied by Supreme Court, January 13, 1951.

J. J. Lutin, and Albert Williams, of Nashville, for plaintiff in error.

Walker & Hooker, of Nashville, for defendant in error.

HICKERSON, J. Harry L. Banniza brought this suit against M. L. Levitan to recover damages for personal injuries which he received when he was shot with a pistol.

The negligence charged in the declaration was that defendant operated a retail liquor store in Nashville,

Tennessee, and plaintiff worked for him. L. J. Sulzbacher came to the store to buy or borrow a pistol from defendant. Defendant purported to remove the cartridges from the pistol before handing it to Mr. Sulzbacher, but he left one cartridge in the gun. Mr. Sulzbacher examined the pistol, and in doing so discharged it; and plaintiff was shot and injured in this manner.

The suit was defended upon the grounds: (1) There was no actionable negligence on the part of defendant. (2) The proximate cause of the accident and plaintiff's injuries was an independent intervening cause. (3) Plaintiff released L. J. Sulzbacher from liability; and this release operated as a release and discharge of defendant from liability.

Judgment was entered in favor of plaintiff, upon a jury verdict, in the sum of $1,300. Defendant appealed in error to this court.

Assignment I: "There was no evidence to support the verdict."

There is material evidence to support the following facts: Defendant owned and operated a retail liquor store in Nashville, Tennessee. Plaintiff worked for defendant in this store as a salesman. He was paid $60 a week. On July 18, 1948, L. J. Sulzbacher came into the store and wanted to buy or borrow a pistol. Defendant was a collector of firearms and kept them in his store. Defendant brought two pistols to the counter to show Mr. Sulzbacher. One was loaded and one was empty. They were the revolver type of pistol. Defendant broke the loaded pistol down and purported to unload it or to remove all the cartridges from it. He put the two pistols on the counter for his customer to inspect after he had unloaded the gun. In regard to the inspection of the pistols, by Mr. Sulzbacher, W. L. Banniza,

a brother of plaintiff, testified that defendant told him: "I looked in one of the guns, it wasn't loaded, I looked in the other gun and it was loaded and had cartridges in it and I took the cartridges out but obviously left one in. Mr. Sulzbacher took the pistols, looked at one and the other and snapped them."

Defendant was called to another part of the store to wait upon his customer, and he told plaintiff's brother: "Before I knew it your brother was shot. It just happened like that."

Defendant testified:

"Q. Were you looking at Mr. Sulzbacher when he shot? A. No, sir, I was waiting on the customer. All my attention was centered to the customer.

"Q. You have heard statements made here that you said that it was obvious that there was a shell in the pistol, you still think there was a shell in the pistol? A. Well, there had to be one in it, but I didn't think I left one in it. I can't believe that I did.

"Q. Is it your best judgment now that you left any, even with the fact of the shooting, that you left any shell in the pistol? A. If I did it is the first time I have ever had it happen to me. I always take all the shells out when I unload a pistol.

"Q. Any prudent man does, but the question I am asking you is not what you usually do, but whether or not you have any recollection now that you left a shell in that pistol? A. No, sir, I don't remember leaving a shell in the pistol. It was a surpprise to me when the gun went off."

Defendant takes the position that the probabilities are equal: (1) That defendant left the cartridge in the pistol; or (2) That Mr. Sulzbacher picked up one of the shells and put it in the pistol. We cannot agree

with that contention. We think the more probable theory from the facts and circumstances here appearing is that defendant purported to unload the pistol in the presence of Mr. Sulzbacher, and defendant thought he had unloaded it. Mr. Sulzbacher thought so too; but through negligence and inadvertence one of the cartridges was left in the pistol by defendant. It is neither reasonable nor probable that Mr. Sulzbacher would have deliberately put a cartridge in the pistol, and then have begun to snap it and shoot plaintiff. That would be contrary to normal actions of men. It is conceded the shooting was accidental, not deliberate. Wherefore whether defendant left the cartridge in the gun or Mr. Sulzbacher put it in there was a jury question; and the jury decided defendant left it in the gun when he purported to unload it. There is material evidence to sustain that conclusion. Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965; Tennessee Central Railway Company v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931.

■ Defendant takes the further position that it was not negligence for him to hand a loaded gun to a responsible man to examine. The facts here presented are more unfavorable to defendant than such assumed case. Here, defendant purported to unload the gun in the presence of Mr. Sulzbacher; left the "unloaded" gun with Mr. Sulzbacher, knowing that Mr. Sulzbacher was "snapping" it; when, in fact, defendant had left one cartridge in the gun. It was for the jury to decide whether defendant was negligent. The record shows the Attorney for defendant had this same view of the case. Defendant stated: "I always take all the shells out when I unload a gun." Whereupon, his Attorney, who was examining him, stated: "Any prudent man does."

 The jury was justified in reaching the conclusion that defendant did not act as a prudent man would when he left the cartridge in the gun. The trial Judge properly submitted the case to the jury on the question of defendant's negligence. Morgan v. Tennessee Central Railway Company, 31 Tenn. App. 409, 216 S. W. (2d) 32.

Assignment II: ''The court erred in not sustaining defendant's motion that a verdict be directed in favor of defendant on the ground that the proximate cause of plaintiff's injury was the active intervention of an independent volitive force.''

 The rule relating to intervening cause is this: If the first actor is negligent, and, ''If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury''. Cartwright v. Graves, 182 Tenn. 114, 184 S. W. (2d) 373, 381; Gannon v. Crichlow, 13 Tenn. App. 281.

 In 38 Am. Jur., 731, Negligence, Sec. 73, this rule is stated: ''If the second actor does not become apprised of the danger arising from the first actor's negligence until after his own negligence, added to the existing peril, has made an accident with injurious consequences inevitable, both actors are liable, since the negligence of the one concurs with the negligence of the other proximately to cause the injury.''

The same rule is stated in 65 C. J. S., pages 691-692, Negligence, Sec. 111, under title, ''Intervener's awareness of potential danger.''

 Our Supreme Court followed this rule in Ford Motor Company v. Wagoner, 183 Tenn. 392, 192 S. W. (2d) 840, 164 A. L. R. 364; where the court held that the intervening actor must act with conscious regard of

the original cause for the intervening cause to exculpate the original wrongdoer by breaking the causal connection between the original cause and the ultimate result.

Here, we think the intervening cause is not the sole proximate cause of the ultimate injury for two reasons: (1) Mr. Sulzbacher did not know one cartridge was left in the gun. He reasonably thought it was unloaded. He was not conscious of the condition brought about by the original wrong. (2) The act of Mr. Sulzbacher might reasonably have been anticipated by defendant, especially since defendant stated that Mr. Sulzbacher was "snapping" the pistol.

The defense of intervening cause must fail.

Assignment III: "The court erred in failing to submit to the jury the factual issue raised by the defendant's special plea."

L. J. Sulzbacher paid plaintiff $4,000 and took a covenant not to sue. The covenant is here quoted.

"Covenant Not to Sue.

"Whereas, Harry L. Banniza of Nashville, Tennessee, instituted a suit in the Circuit Court of Davidson County, Tennessee, against L. J. Sulzbacher for personal injuries; and,

"Whereas, the said Harry L. Banniza doubts, on advise of his counsel, his right to a recovery against the said L. J. Sulzbacher in the said suit brought by him but has confidence in his right to recover against M. L. Levitan a verdict far in excess of the amount hereinafter set out.

"Now, Therefore, for and in consideration of the sum of Four Thousand Dollars ($4,000), paid to me by the said L. J. Sulzbacher, receipt of which is hereby acknowledged, I hereby expressly agree and covenant with the said L. J. Sulzbacher to dismiss and not further prosecute

my said suit against him in the Circuit Court of Davidson County, and I further agree for myself, my heirs and my personal representatives, not to reinstitute said suit or prosecute any other suits against the said L. J. Sulzbacher by reason of the injuries and damages that have already or may hereafter develop by reason of a certain accident occurring on or about July 17, 1948, wherein I was wounded by a pistol shot, and I further agree to hold harmless the said L. J. Sulzbacher for any and all claims of liability against him by reason of said accident.

"This agreement, however, is not entered into or intended by me as a release of any claim or action that I may have against M. L. Levitan by reason of the matters above set forth, and it is expressly understood and agreed that this agreement is not in any wise to inure to the benefit of the said M. L. Levitan.

"It is clearly understood that this instrument is merely a covenant not to sue the said L. J. Sulzbacher and is a release of the claim, action and damages of the undersigned Harry L. Banniza.

"Witness the signature of the said Harry L. Banniza at Nashville, Tennessee, this the 8 day of April, 1949.

/s/ Harry L. Banniza."

Defendant filed the following special plea: "Defendant, for further plea to the plaintiff's declaration, says that he and one L. J. Sulzbacher were jointly charged with the wrong alleged by the plaintiff in his declaration and that said alleged wrong, if found to be a basis for liability, would constitute a joint cause of action against this defendant and L. J. Sulzbacher; that the plaintiff accepted from said Sulzbacher the sum of $4,000 in satisfaction of said claim against said Sulzbacher and released said Sulzbacher from all further responsibility for

said wrongful act upon which this defendant's liability, if any, is based. Wherefore defendant pleads a release and discharge of himself by the aforesaid acquittance.''

It is conceded by defendant that the construction of the paper writing must be determined by the court; but, defendant contends that there are certain factual questions made by the special plea which must be determined by the jury.

The controversy about the ''covenant not to sue'' arises from this sentence in the paper: ''It is clearly understood that this instrument is merely a covenant not to sue the said L. J. Sulzbacher and is a release of the claim, action and damages of the undersigned Harry L. Banniza.''

The entire instrument shows, beyond doubt, that the parties intended to contract on a covenant not to sue and not upon a release. It is apparent from the instrument itself and from the proof relating thereto, admitted in the absence of the jury, with no countervailing evidence, that the word ''not'' was left out of the above sentence in the covenant not to sue by inadvertence. The sentence was intended to read: ''and is not a release of the claim * * *.''

The trial court correctly construed the covenant not to sue, without the aid of the jury; and we agree with the construction put upon the covenant by the trial judge.

Assignment IV: ''The court erred in sustaining plaintiff's objection to testimony that plaintiff had received a sum of money in settlement of his claim against Sulzbacher for the alleged injury for which he was suing defendant.''

This court is bound by the decisions of the Supreme Court. In Nashville Interurban Railway Com-

pany v. Gregory, 137 Tenn. 422, 193 S. W. 1053, 1056, our Supreme Court said:

"It is difficult to see how a simple covenant not to sue one tort-feasor could affect or reduce the liability of another tort-feasor. It is true that there can be but one satisfaction for an injury, but in the case before us the parties expressly contracted that the sum received was not intended as a satisfaction of plaintiff's claim for damages. A covenant not to sue does not extinguish the cause of action. It is not a defense to a suit on such cause of action. The remedy of the covenantee is to bring his action for breach of covenant, although in some of the cases noted above the covenantee has been allowed to plead the covenant to avoid circuity. Inasmuch as such a covenant can only be pleaded by the covenantee by way of set-off or recoupment and is not a satisfaction of the claim for damages, it is difficult to understand how it could be available at all to another tort-feasor, either to bar the suit against him or to reduce the recovery had against him. He has no semblance of right to a cross-action.

"We, therefore, think the trial judge correctly declined to charge those requests which had the effect of instructing the jury to credit the defendant interurban company with the amount received by the plaintiff from the telephone company upon the covenant not to sue."

See City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612, where this court followed the rule, citing the Gregory case as authority for so doing.

There is no error in the judgment of the circuit court. Let it be affirmed with interest and all costs.

Howell, J., and Kizer, Special Judge, concur.