Isbell *v.* Strider *et al.*

*(Nashville,* December Term, 1950.)

Opinion filed July 27, 1951.

686

J. G. LACKEY, JR., and E. J. WALSH, both of Nashville, for plaintiff in error.

GEORGE H. ARMISTEAD, JR., of Nashville, for Strider & Wood.

WILL R. MANIER, JR., of Nashville, for Electric Membership Corp.

Mr. Justice Tomlinson delivered the opinion of the Court.

T. M. Strider and Company, as an independent contractor, built a spur line railroad track in Rutherford County for the N. C. & St. L. Railway Company. This railroad was constructed "under the high voltage, dangerous and deadly" uninsulated electric wire lines of Middle Tennessee Electric Membership Corporation. The space between the railroad track and these electric wires was not sufficient "to prevent any one riding or standing on top of the freight car from coming in contact with said electric wire or wires while said freight car was proceeding on said spur track and under said electric wire."

While the N. C. & St. L. Railway Company was operating one of its trains on said spur track its employee, Isbell, in the performance of his duties as such employee was standing upon one of the freight cars. As that car passed under the aforementioned electric wires, Isbell, who was on the top of one of the cars, came in contact with one or more of the wires, whereby he was knocked down and seriously injured. He did not know that the wires "were suspended so low that he might come in contact with one or more" of them while performing his duties in the manner above stated.

Isbell brought suit for the injuries received in the above stated manner, according to his declaration. As originally drawn the declaration alleged that Strider and Company "had built" the railroad at the time of the aforesaid accident. That declaration was amended so as to add "or was in the process of building" said railroad.

One of the grounds of the demurrer of Strider and Company, broadly stated, was that the building of the

railroad in the manner alleged was not the proximate cause of the accident, and that it must be so determined upon the face of the declaration. The trial judge sustained the demurrer and dismissed the bill. Isbell has appealed.

The fact that the railroad was using that part of the track over which these wires had been hung necessarily implies it to be a fact that at least that part of the track had been completed at the place and in the manner intended by the railroad and had been accepted by it. Therefore, the case stated in the plaintiff's declaration was not changed by the amendment "or was in the process of building" a railroad.

■ Counsel for Isbell recognize the general rule that where an independent contractor is employed to construct any given work and has done the same, and it has been accepted by the employer, then the independent contractor is no longer liable to third persons for injuries received as the result of defective construction. The insistence here is that the case stated does not come within that general rule because, so it is alleged, the finished product was imminently dangerous to persons who could reasonably be expected to make use of that product, and, therefore, comes within an alleged exception to the general rule; or, quoting from their brief, their insistence is that: "When an independent contractor has done work on an instrumentality and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if the contractor knew or in view of the peculiar circumstances of the case should have known the dangerous condition by him created."

Assuming the legal accuracy of the above mentioned proposition of law, and assuming negligence upon the part of the independent contractor, it would not follow that the independent contractor is liable unless his negligence was the proximate cause of the accident; or, more explicitly here,—"if between the agency setting at work the mischief" (the independent contractor) "and the actual mischief done" (the injury sustained) "there intervenes a conscious agency which might or should have averted mischief, the original wrong doer ceases to be liable" provided the intervening act is one which could not have been reasonably anticipated by the original wrongdoer. *Ford Motor Co.* v. *Wagoner,* 183 Tenn. 392, 398-399, 192 S. W. (2d) 840, 852, 164 A. L. R. 364.

■ The accident in the case at bar could not have occurred except for the fact that the railroad was operating its trains over the railroad track which the independent contractor had built at the place designated by the railroad and according to its contract. Nor would it have occurred if the electric wires had been relocated so as to suspend them at a height in excess of that which would be obtained by an employee standing on the top of such freight cars as the railroad elected to operate on that spur track. Nor would it have occurred if the railroad, in operating cars over the track, had selected cars the height of which, with an employee standing on top thereof, was insufficient to bring that employee's body in contact with the overhanging wires. Nor would it have occurred if the employee had not been on top of a car of such height.

'Strider, the independent contractor, who had built the track at the place and in the manner called for by his contract, had no control over these electric wires. Nor

did he have any control over the operation of the railroad's trains on that track. He had no authority to determine the height of freight cars which would be operated on that track, nor did he have any control over the manner in which the employees of the railroad should conduct themselves while operating over this track freight cars of such height as the railroad elected to use there.

Here then we do have an intervening conscious agency by reason of whose conduct this accident occurred. That agency was the Railroad Company. The act which it committed was the operation of freight cars of the height above mentioned over this track (1) without first either giving reasonable notice to its employees of the existence of the wires and directing them accordingly, or (2) without first causing the relocation over its property of these wires to such height as would enable its operation with safety of freight cars of the height mentioned over that track.

So, the determinative question here is whether the independent contractor in building the road at the place and in the manner called for by the contract could reasonably have anticipated that the railroad would not take the immediately hereinabove mentioned precautionary steps before operating over this track freight cars of such height as to bring the bodies of its employees properly standing thereon in contact with these wires. Our opinion is that the chance of such conduct upon the part of the railroad company ''was so remote as not to come within the scope of reasonable apprehension''.

Since, in the case at bar, there was an intervening conscious agency, the railroad, by reason of whose conduct this accident occurred, and since the chance of such conduct happening was so remote as not to come within

the scope of reasonable apprehension, it follows under the authority of *Ford Motor Co.* v. *Wagoner,* supra, that the trial court was correct in sustaining the demurrer. Other grounds of the demurrer need not, therefore, be discussed.

The Mississippi case of *Holmes* v. *T. M. Strider & Co.,* 186 Miss. 380, 189 So. 518, 123 A. L. R. 1190, is strongly relied upon by plaintiff-in-error, Isbell. There the independent contractor had rebuilt a bridge on a public highway in a manner so negligent as to make its use dangerous per se to the traveling public. The result was an injury to the plaintiff, a member of the traveling public. There was no intervening conscious agency by reason of whose conduct the accident occurred. There was no intervening act of negligence upon the part of any one. The injury was occasioned directly by the gross negligence of the independent contractor who knew that the bridge would be used in exactly the manner in which it was turned over to the State.

The case here under consideration does resemble in one very important aspect—though quite different in another—the case of *Bryson* v. *Hines* decided by the United States Circuit Court of Appeals, Fourth Circuit, and reported in 268 F. 290, 295, 11 A. L. R. 1438. In that case the independent contractor has built a railroad track that was dangerous when trains were operated over it at all. The independent contractor was held liable for injuries resulting from that situation. However, other injuries or deaths occurred because the government, in operating trains over it, placed light wooden cars between heavy steel cars "in consequence of which the wooden cars were crushed by the derailment". In holding that the independent contractor was not liable for

injuries resulting from the crushing of the wooden cars by the steel cars the Court said: "We think there can be no recovery for negligence in putting light wooden cars between heavy steel cars, . . . The officers of the army had entire control of the arrangement of the cars, and for their negligence in this respect there was no right of action against" the independent contractor.

In the instant case the railroad track constructed by Strider was not dangerous per se. It became dangerous only when the railroad operated over it cars of a certain height with its employees standing on top of such cars as they passed under the overhanging wires. The railroad had entire control as to the height of the cars which it would operate over this track in that condition and entire control of those it employed in connection with the operation of such cars at such time and place. To hold the independent contractor liable in such a situation for injuries resulting to an employee of the railroad would seem to be an unwarranted departure from the general rule as to non-liability of independent contractors.

■ Isbell made Middle Tennessee Electric Membership Corporation a joint defendant with Strider and caused counterpart summons to be issued to Rutherford County and served on Middle Tennessee Electric Membership Corporation after service of original process had been had in Davidson County on Strider. Strider is a resident of Davidson County. Middle Tennessee Electric Membership Corporation is not a resident of Davidson County, its situs and principal office being in Rutherford County.

After the trial judge sustained the demurrer of Strider to the declaration filed by Isbell and dismissed the suit as to Strider, the defendant, Middle Tennessee Electric

Membership Corporation, filed a plea in abatement to the effect that the Davidson County Court had no jurisdiction of it, Middle Tennessee Electric Membership Corporation, the suit having been dismissed against the only material defendant who was a resident of Davidson County wherein the original summons was sued out. The Court sustained this plea and dismissed the suit as to the Membership Corporation. Isbell has likewise appealed from that order.

Code Section 8653 is the authority for the issuance of counterpart summons to a county other than the one in which the suit was instituted for a joint defendant in the second county after service of original process on the defendant in the county in which the suit was instituted.

In an opinion of this Court announced on June 16, 1951 in the case of *Deaton* v. *Evans,* Commissioner of Tennessee Department of Finance and Taxation, 192 Tenn. 348, 241 S. W. (2d) 423, and which will be published, it was held that if the defendant residing in the county where the action is commenced is not a material defendant, then the Court in that county where the action is commenced is without jurisdiction over another defendant brought in by counterpart process. This opinion followed the holding in *Achy* v. *Holland,* 76 Tenn. 510, wherein it was held in line with previous decisions that ''where the original summons is served on some resident of the county where the suit is brought, if he is discharged before trial, leaving only a non-resident of the county, brought in by counterpart the Court loses its jurisdiction''. That was the construction placed upon Code Section 8653.

In the instant case this suit had been dismissed as to Strider, the only defendant who was a resident of said

county where the suit was brought. That action has hereinabove been sustained. It follows under the authorities immediately above mentioned that in dismissing the suit against Strider, the only defendant who is a resident of Davidson County, the Court lost jurisdiction as to Middle Tennessee Electric Membership Corporation. Accordingly, that Court was correct in sustaining the plea in abatement and dismissing the suit as to that defendant, a resident of Rutherford County.

Affirmed with all costs adjudged against Isbell.

All concur.