**John R. GUFFIE, Appellant,**

v.

**ERIE STRAYER COMPANY.**

No. 15020.

United States Court of Appeals
Third Circuit.

Argued March 2, 1965.

Decided Aug. 9, 1965.

---

10. See Mertens, § 50.64–65.

Warren Butler, Joseph B. Yancey, Yancey & Butler, Knoxville, Tenn. (Lawrence R. Nelson, Erie, Pa., on the brief), for appellant.

Henry E. Rea, Jr., Brandt, Riester, Brandt & Malone, Pittsburgh, Pa., and William W. Knox, Knox, Pearson & McLaughlin, Erie, Pa., for appellee.

Before BIGGS, Chief Judge, and FORMAN and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

Plaintiff, an employee of the Tennessee Valley Authority, was severely injured while working as an equipment mechanic at a concrete batching plant in Tennessee. He brought this diversity action against defendant alleging that it was negligent in designing and manufacturing the plant. At the close of plaintiff's case the court below granted defendant's motion for a directed verdict under Rule 50 on the ground that no negligence by defendant had been shown, and if there had been any negligence it was superseded by the negligence of TVA.

I

The Facts

The evidence viewed as it must be in the light most favorable to the plaintiff presents these facts. On March 27, 1961 TVA after competitive bidding awarded a contract to defendant to design and manufacture a concrete batching plant which was to be used on the site of the Melton Hill dam project in Tennessee. Although TVA described its general requirement, the actual plans, including the design and arrangement of the bins, were

made by defendant. When the design was completed the plans were submitted by defendant to TVA which approved them with the express statement that it did not thereby relieve defendant of any part of its responsibility for the correctness of the design, the details and dimensions. In any event TVA's approval of the plan would not absolve defendant if it was negligent in the performance of its work of design and manufacture of the plant. After approval of the plans, the component parts of the plant were manufactured by defendant and shipped to the site where they were assembled by TVA.

The purpose of the plant was to provide concrete for the construction of the dam. The bin portion of the plant with which we are concerned was used to store a mixture of sand, rock and stone, which is known as "aggregate", to be released as needed at another part of the plant where it was mixed with cement to form concrete. The sand, rock and stone was gathered from underground storage and placed on a conveyor which carried it upward on an incline above the top of the two bins more than forty feet above the ground. At that point the aggregate was dropped onto a horizontal shuttle conveyor which distributed it into the two bins by moving forward to one bin and in reverse to the other bin. Each bin was eleven feet wide, thirty-five feet long and forty-one feet high. The bins were constructed of fabricated metal, and were each equipped with a maintenance platform made of hatched steel, ten feet above the ground. The bins were identical in design and were three feet apart. The sides of the bins which faced each other slanted inward beginning at a point substantially above the maintenance platform and the platform extended to the outer line of the top of the bin. This may be described as forming a right triangle, with the maintenance platform constituting the base, the sloping side of the bin as the hypotenuse, and the imaginary projection from the point where the side slope began to the maintenance platform as the altitude of the triangle. On the level of the maintenance platforms were the scales and releasing machinery which were used to weigh the aggregate and release it as it was needed.

The design of the plant was unique in its provision for two separate bins fed by a single conveyor, instead of the usual plan of a single bin supplied directly by a conveyor.

Some spillage is normal in batching plants, but when this plant was placed in operation more than the ordinary amount occurred. A good deal of this was caused by the failure of the horizontal shuttle at the top of the bins to function properly in reverse. This spillage fell into the open space between the two bins and constituted a danger to the workmen while they were on the maintenance platforms or crossing from one platform to the other. The rocks and stones ranged from three-quarters of an inch to six inches in diameter and were up to eighteen inches in length. TVA sought to reduce the excessive spillage by replacing the horizontal shuttle conveyor with a "pants leg chute", so-called because of its resemblance to a pair of trousers. By this device the aggregate was dropped into the top of the pants leg chute from which it automatically fell into one or the other of the two legs which led directly into a bin. Spillage continued, however, and to prevent it from striking workmen below TVA erected a roof over the three foot open space between the two bins. The roof also served to winterize the bins—which the defendant knew would be necessary. It was made of wood covered with corrugated metal and was pitched on an angle to avoid accumulation of spillage by deflecting it off to a safe area on the ground. At the same time, to facilitate the passage of workmen between the two platforms and to avoid their falling at the edge, TVA also constructed a wooden floor which bridged the three foot space. The roof and wooden floor were designed and installed by TVA, although there is disputed testimony that employees of defendant had observed it because they

were physically present at the plant site while this work was done. The roof was in use from the time of its completion on September 20, 1961 until the accident on November 2, 1961. In this short interval TVA twice cleaned away accumulations of aggregate, although it was not visible either from the ground or from the maintenance area.

It appears to be agreed on all sides that at the time of the accident plaintiff was standing on the connecting wooden floor between the two maintenance platforms. The roof suddenly collapsed and plaintiff was struck by portions of the roof and by accumulated aggregate which fell with it.

## II

### Defendant's Negligence

While it is true that a manufacturer is not an insurer of the product which he designs,[1] nevertheless he must use reasonable care to avoid creating an undue risk of harm to those who might reasonably be expected to use or be affected by it.[2] What is reasonable care must in turn be decided in the light of what was reasonably foreseeable at the time the product's design was put in use. While a manufacturer is not required to be clairvoyant he is rightly held to the standard of an expert in regard to his own product.[3] Foreseeability, of course, does not require that one must foresee the precise hazard or envisage the harm in the detailed manner in which it oc-

curred; it is enough if some harm of a like general character is foreseeable.[4] The law of Tennessee by which this case is governed is in harmony with these principles.[5] It is also clear that in Tennessee privity has been abandoned as a requirement in a suit for negligence.[6]

These general principles when applied to the facts in this case show that the question of defendant's negligence was clearly for the jury. Spillage from a conveyor system was common even in the best designed plants. Yet defendant designed a plant that was unique in having separate bins fed by one conveyor system and provided no protective cover for the maintenance platforms situated thirty feet below the point of expected spillage. Spillage did in fact strike the maintenance platforms and necessarily also fell into the three foot open shaft which workmen crossed in stepping from platform to platform.

A jury is the proper tribunal to determine whether in these circumstances the failure of defendant to provide a protective covering was negligence. Especially is this so in the light of the testimony that an adequate shelter might have been installed at a cost of $400, a trifle compared with the total cost of the plant of $180,658.

## III

### The Effect of TVA's Intervening Act

Defendant asserts that in any event it is relieved of liability because TVA

1. 2 Harper & James, The Law of Torts (1956), § 28.9, pp. 1554–55; Davlin v. Henry Ford & Son, 20 F.2d 317, 319 (6 Cir. 1927).

2. 2 Restatement, Torts, §§ 395, 398; Prosser, The Law of Torts (3d ed. 1964), § 96; Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825 (3 Cir. 1951).

3. 2 Harper & James, The Law of Torts (1956), § 28.4; Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 847 (1962).

4. "[W]hen it is found that a man ought to have foreseen in a general way consequences of a certain kind, it will not

avail him to say that he could not see the precise course or the full extent of the consequences, being of that kind, which in fact happened.": Pollack, Liability for Consequences, 38 L.Q.Rev. 165, 167 (1922), quoted in 2 Harper & James, The Law of Torts (1956), § 20.5, p. 1147; see also 2 Restatement, Torts, § 435.

5. See Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S.W.2d 756 (1944); Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S.W.2d 450 (1947).

6. Dunn v. Ralston Purina Company, 38 Tenn.App. 229, 272 S.W.2d 479 (1954); see also General Motors Corporation v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655 (1960).

was negligent in erecting the roof and in permitting such an accumulation of aggregate that the roof collapsed.

The court below agreed with this contention after finding as a matter of law that TVA was negligent on two grounds: (1) its employees in constructing the roof had notched too deeply a supporting timber and the roof collapsed because of this weakness; and (2) TVA failed to perform its duty to keep the roof clear of the accumulation of sand and stones. The court below concluded that these two items of negligence on the part of TVA were not foreseeable by the defendant which accordingly was relieved of liability by the superseding negligence of TVA.

■ At the outset the question arises whether the negligence of TVA may be assumed as a matter of law. It is true that there was evidence that one of the supporting timbers was deeply notched and an expert testified that he believed that the roof first fell in at the point of this notching. However, neither this witness nor any other witness actually saw the collapse of the roof and the expert himself did not testify that in his opinion the notched timber was the cause of the collapse. The roof had been in use for about six weeks prior to the accident. In the intervening time TVA had cleaned the roof twice but the evidence does not indicate the dates on which this occurred. When the roof collapsed there had accumulated on it about one and one-half tons of aggregate, but this had not been visible from the ground or from the maintenance area.

In these circumstances we believe it was unjustified for the court below to find as a matter of law that TVA was negligent. There is, of course, adequate evidence which would justify a finding that TVA was negligent. This factual conclusion however, depending as it must on oral evidence, was for the jury and was not to be made by the court on a directed verdict.

■ Even if it be assumed, however, that TVA was negligent there remains the question whether it is clear as a matter of law that its conduct was so extraordinary that it was not reasonably foreseeable by the defendant and therefore was a superseding cause which relieved defendant of liability for the accident.[7]

The cases relied on by defendant do not support its contention that it is excused from liability as a matter of law.

In the leading case of Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840, 164 A.L.R. 364 (1946), on petition for rehearing, 192 S.W.2d 852 (1946), Ford was held relieved of liability for its negligence in defectively designing an automobile hood latch because of the superseding negligence of an intermediate owner. When Ford discovered the defect in design it instructed all its agencies to install an auxiliary device which it provided. The device was offered for installation free of charge to the intermediate owner, who was a salesman employed by a Ford agency, but he declined to have the work done, saying that he did not believe it to be necessary. He later sold the automobile. Plaintiff, driving with the consent of the ultimate owner, was injured when the hood loosened because of the defective latch and caused her to lose control of the car. The case is readily distinguishable from the present one. There the court emphasized that although the conduct of the intermediate owner constituted conscious intervening negligence it was so extraordinary that it could not reasonably have been anticipated by Ford.

7. See Morris v. Bolling, 31 Tenn.App. 577, 218 S.W.2d 754 (1948), and cases there cited; Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840 (1946), on petition for rehearing, 192 S.W.2d 852 (1946). See also Prosser, The Law of Torts (3d ed. 1964), § 51; 2 Restatement, Torts §§ 439–42, 447; Leposki v. Railway Express Agency, Inc., 297 F.2d 849 (3 Cir. 1962); Eldredge, Culpable Intervention As Superseding Cause, 86 U. of Pa.L.Rev. 121 (1937), reprinted in Eldredge, Modern Tort Problems (1941), p. 205.

Brown v. Hudson, 50 Tenn.App. 658, 363 S.W.2d 505 (1962), also relied on, is readily distinguishable. There the decedent, employed by the bailee of a dump truck, was killed as he attempted to correct its defective hydraulic lift system while the bed of the truck was in a raised position. The court declared that the danger was so obvious that the defendant could not reasonably anticipate conduct by others in disregard of it. The discussion of intervening or superseding cause, however, was dictum because the court found that the defendant-bailor was not negligent.

A number of other Tennessee cases since Ford Motor Co. v. Wagoner illustrate the subject. In McGinniss v. Brown, 30 Tenn.App. 178, 204 S.W.2d 334 (1947), defendant had placed coal tracks in a mine too close to the wooden pillars which supported the roof of the mine. Plaintiff removed a pillar in an effort to allow free passage for the cars. The court refused summary judgment for the defendant and held that it was for the jury to decide whether it was foreseeable that a miner might remove such a pillar despite the hazard in doing so. In Morris v. Bolling, 31 Tenn.App. 577, 218 S.W.2d 754 (1948), a taxi driver left his cab with the keys in the ignition while an intoxicated passenger was either asleep or unconscious on the front seat. While the taxi driver was away the passenger awoke and negligently drove the cab and injured the plaintiff. It was held that whether the intervening negligence of the passenger was foreseeable was for the jury. In Levitan v. Banniza, 34 Tenn.App. 176, 236 S.W.2d 90 (1950), defendant was not relieved of his negligence in failing to unload completely a pistol which he handed to a customer, who, believing it was unloaded, pointed it and pulled the trigger, injuring the plaintiff. It was thus considered to be foreseeable by defendant that an adult would pull the trigger of an apparently unloaded firearm while pointing it in the direction of another person. In Justus v. Wood, 209 Tenn. 55, 348 S.W.2d 332, 349 S.W.2d 793 (1961), plaintiff was injured by the negligence of a thief who had stolen the defendant's automobile. It was held that the defendant's negligence in leaving the keys in the car was not neutralized as a matter of law by the negligence of the thief who drove it.

These Tennessee cases clearly show that questions of causation ordinarily are to be decided by the jury. It is only where reasonable minds could not differ that the question may be decided as a matter of law.[8]

In the present case foreseeability by the defendant of the negligent effort by TVA to correct the danger of spillage striking the maintenance area, a hazard which its own design created, is a matter to be determined by the jury.

The judgment of the court below therefore will be reversed with direction to award a new trial.

---

8. McGinniss v. Brown, 30 Tenn.App. 178, 204 S.W.2d 334 (1947), and cases there cited.