IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2017 Session

## CHRISTOPHER O'DNEAL, ET AL. v. BAPTIST MEMORIAL HOSPITAL-TIPTON, ET AL.

**Appeal from the Circuit Court for Tipton County**
No. 6692      Joe H. Walker, III, Judge

_____

**No. W2016-01912-COA-R3-CV**

_____

Plaintiff parents of infant who died in child birth appeal a jury verdict in favor of the medical provider defendants. During voir dire, the trial court denied Plaintiffs' request for additional peremptory challenges under Tennessee Code Annotated section 22-3-104(b) on the basis that Plaintiffs were bringing their claim on behalf of the decedent infant. Based upon the Tennessee Supreme Court's decision in ***Beard v. Branson***, 528 S.W.3d 487 (Tenn. 2017), we conclude that the trial court erred in treating Plaintiffs as a single "party plaintiff" and that Plaintiffs were entitled to eight peremptory challenges under the statute at issue. We also hold that under ***Tuggle v. Allright Parking Sys., Inc.***, 922 S.W.2d 107 (Tenn. 1996), the trial court's error resulted in prejudice to the judicial process that necessitates a new trial. All other issues are pretermitted. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

W. Bryan Smith, Memphis, Tennessee, for the appellants, Christopher O'DNeal, and Cassani Turner.

James L. Kirby and Tabitha F. McNabb, Memphis, Tennessee, for the appellee, Baptist Memorial Hospital-Tipton.

James T. McColgan and Sherry S. Fernandez, Cordova, Tennessee, and Sybil V. Newton, Birmingham, Alabama, for the appellees, Thomas J. Caruthers, Jr., M.D., and Premier Women's Care, Inc.

# OPINION

## BACKGROUND

Plaintiffs/Appellants Christopher O'Dneal ("Father") and Cassani Turner ("Mother," and together with Father, "Plaintiffs") are the parents of an infant who died in child birth in February 2009 at Defendant/Appellee Baptist Memorial Hospital-Tipton ("the Hospital"). On April 6, 2010, Mother, individually and as administrator of the child's estate, and Father, individually and as the child's next of kin, filed a complaint against the Hospital, the treating physician Thomas Caruthers, Jr., M.D., and Premier Women's Care, Inc. ("Premier Women's Care" and together with the Hospital and Dr. Caruthers, "Defendants"). The complaint alleged negligence and vicarious liability for the wrongful death of their child. Eventually, Plaintiffs were permitted to file an amended complaint to raise claims of negligent infliction of emotional distress. Defendants in turn filed separate answers, denying that they committed negligence or that their negligence was the proximate cause of the infant's death. Dr. Caruthers and Premier Women's Care also asserted that neither Mother nor Father had individual claims apart from the wrongful death action and that the individual claims of both parents should be dismissed.[1]

Prior to trial, Defendants also filed a motion in limine to exclude a "home video" taken of the child's birth. The trial court granted the motion to exclude the video by order of November 30, 2015, finding that the prejudicial effect of the evidence substantially outweighed its probative value.

Trial began on May 10, 2016, and lasted six days. During voir dire, Plaintiffs requested eight peremptory challenges pursuant to Tennessee Code Annotated section 22-3-104(b), arguing that eight challenges were required because there were two "party plaintiffs." The trial court denied the request, finding that "it's really the estate's lawsuit" and granted Plaintiffs four peremptory challenges, with two additional challenges for alternates. Defendants were given eight challenges without objection. Plaintiffs utilized all of their peremptory challenges during voir dire and indicated on a form contained in the record that they had no remaining challenges. Also during voir dire, Plaintiffs lodged a challenge to the exclusion of a juror by the Hospital on the basis of race. The trial court determined that Plaintiffs had set forth a prima facie challenge under ***Batson v. Kentucky***, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Hospital then stated that the exclusion of the juror was on the basis of her possible bias in favor of Dr. Caruthers and an alleged derogatory name used by the potential juror for one of the Hospital's doctors. The trial court thereafter allowed the juror to be excluded.

---

[1] Dr. Caruthers and Premier Women's Care filed separate answers. Both answers, however, contended that the correct style of this case should be "Christopher R. O'Dneal and Cassani D. Turner, for and on behalf of [the child]." No motion to dismiss on this basis was filed by any party and neither Mother nor Father's individual claims were dismissed from this case prior to trial.

During trial, much of the testimony concerned whether the child's death was due to negligence or a pre-existing condition with a multitude of experts testifying for each side. At the close of proof, the trial court granted a directed verdict as to Plaintiffs' negligent infliction of emotional distress claim, generally finding that the claim had been abandoned. Thereafter, the jury returned a verdict finding that Dr. Caruthers and the Hospital were guilty of medical negligence but that the child's death was not caused by Defendants' negligence. The trial court entered judgment on the jury verdict on May 18, 2016. Plaintiffs later filed a motion for new trial, which was denied by order on August 8, 2016. This appeal followed.

### ISSUES PRESENTED

Plaintiffs raise three issues in this case, which are taken and slightly restated from their brief:

1. Whether the trial court erred in limiting Plaintiffs to less than eight peremptory challenges?
2. Whether the trial court erred in denying Plaintiffs' challenge to the striking of an African-American juror.
3. Whether the trial court erred in excluding the video of the delivery of the infant at trial.

### DISCUSSION

We begin with Plaintiffs' first issue: that the trial court erred in determining that they were entitled to less than eight peremptory challenges under Tennessee Code Annotated section 22-3-104 in this wrongful death action.[2] "The right to challenge peremptorily is the right to exclude the prospective juror without assigning any reason for the challenge. Peremptory challenges are allowed by the Legislature as an act of grace and can be exercised as a matter of right only to the extent allowed by statute." ***Tuggle v.***

---

[2] At oral argument, Plaintiffs also asserted that additional peremptory challenges were proper because of the negligent infliction of emotional distress claims that had been raised in Plaintiffs' amended complaint. A thorough review of Plaintiffs' initial brief to this court, however, reveals that Plaintiffs did not argue that their negligent infliction of emotional distress claims entitled them to additional peremptory challenges. Rather, the first mention of the negligent infliction of emotional distress claims raised by Plaintiffs was in their reply brief in a rather conclusory response to Defendants' briefs. As such, any argument that the negligent infliction of emotional distress claims were at issue with regard to the peremptory challenges allotted to Plaintiffs was waived. *See **Sneed v. Bd. of Prof'l Responsibility of Supreme Court***, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); ***State v. Walter Francis Fitzpatrick, III***, No. E2014-01864-CCA-R3-CD, 2015 WL 5242915, at *8 (Tenn. Crim. App. Sept. 8, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016), *cert. denied*, 137 S. Ct. 72 (2016) ("Issues raised for the first time in a reply brief are waived.").

*Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996). In deciding this issue, we are called upon to interpret various statutes. As explained by our supreme court:

> When determining the meaning of statutes, our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)). We presume that every word in a statute [or rule] has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the [drafter's] obvious intention. *Id.* Words "'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written." *Id.* (quoting *Lind*, 356 S.W.3d at 895).

*Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015). Issues of statutory construction are reviewed by this Court de novo with no presumption of correctness. *McFarland v. Pemberton*, 530 S.W.3d 76, 91 (Tenn. 2017) (quoting *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016)).

As such, we begin with the language of the statute at issue. *See McFarland*, 530 S.W.3d at 91 (quoting *Martin*, 505 S.W.3d at 518) ("[W]e begin with the actual words of the statute . . . .")). Section 22-3-104 provides, in relevant part:

> (a) Either party to a civil action may challenge four (4) jurors without assigning any cause.
> (b) In the event there is more than one (1) party plaintiff or more than one (1) party defendant in a civil action, four (4) additional challenges shall be allowed to such side or sides of the case; and the trial court shall, in its discretion, divide the aggregate number of challenges between the parties on the same side, which shall not exceed eight (8) challenges to the side, regardless of the number of parties. Even when two (2) or more cases are consolidated for trial purposes, the total challenges shall be eight (8), as provided in this subsection (b).

Thus, where a case involves more than one "party plaintiff," the plaintiffs "shall" be given eight "peremptory" challenges. The Tennessee Supreme Court has previously held that Tennessee's civil peremptory challenge statute mandates that the trial court provide the statutorily required number of peremptory challenges where there are multiple party

plaintiffs.[3] *See Tuggle*, 922 S.W.2d at 107 (holding that the trial court erred in not providing the two party plaintiffs four peremptory challenges each). Moreover, the court held that no showing of "antagonistic interests" between the plaintiffs was required to trigger the additional peremptory challenges mandated by the statute. *Id.* ("Fatal to the defendant's argument is the absence of language in the Tennessee statute which conditions additional challenges on the antagonistic interests of the party plaintiffs.").

Although the term "party plaintiff" is not defined by section 22-3-104, the Tennessee Supreme Court has previously indicated that the term party "'is a technical word with a precise legal meaning'" that "'refers to those by or against whom a legal suit is brought; the party plaintiff or defendant.'" *State v. Flood*, 219 S.W.3d 307, 314 (Tenn. 2007) (quoting *State v. Antillon*, 229 Neb. 348, 426 N.W.2d 533, 538 (1988), *superseded by statute on other grounds*, 1989 Neb. Laws, L.B. 443, *as recognized in State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203, 205 (1989)); *see also Boles v. Smith*, 37 Tenn. 105, 107 (1857) ("By the term party, in general, is meant one having a right to control the proceedings, to make a defence [sic], to adduce and cross-examine witnesses, and to appeal from the judgment."). "Plaintiff" is defined as "[t]he party who brings a civil suit in a court of law." *Black's Law Dictionary* 1267 (9th ed. 2009). Because both Mother and Father are named plaintiffs in this case, they argue that they too should have been awarded four peremptory challenges each, for a total of the eight peremptory challenges mandated under the statute. Any fewer, they argue, requires reversal. *See id.* at 108 (holding that the trial court's failure to provide the plaintiffs with fewer than the statutorily mandated number of peremptory challenges resulted in reversal) (discussed in detail, *infra*).

---

[3] *Tuggle* was based on the predecessor to the current peremptory challenge statute. *See Tuggle*, 922 S.W.2d 107 (citing Tenn. Code Ann. § 22-3-105). Section 22-3-105 provided:

> (a) Either party to a civil action may challenge four (4) jurors without assigning any cause.
> (b) In the event there is more than one (1) party plaintiff or more than one (1) party defendant in a civil action, four (4) additional challenges shall be allowed to such side or sides of the case; and the trial court shall in its discretion divide the aggregate number of challenges between the parties on the same side which shall not exceed eight (8) challenges to the side, regardless of the number of parties. Even when two (2) or more cases are consolidated for trial purposes, the total challenges shall be eight (8), as herein provided.
> (c) If a party is both a plaintiff and a defendant, that party is considered one (1) party for the purpose of this section.

Tenn. Code Ann. § 22-3-105, *repealed by* 2008 Pub.Acts, c. 1159 § 1, eff. Jan. 1, 2009. Despite a minor change in location and slight alteration in language, it is clear that the import of the statute was not changed in any meaningful way for purposes of this case.

Defendants assert, however, that the peremptory challenge statute cannot be read in a vacuum, but must be considered in light of the fact that this is a wrongful death action, with its own attendant statutes and precedents. *See generally* Tenn. Code Ann. § 20-5-106 (outlining the wrongful death cause of action) (discussed in detail, *supra*).[4] Because of the unique nature of wrongful death lawsuits, Defendants assert there is only a single plaintiff in this case, relying in large part on the Tennessee Supreme Court's decisions in *Ki v. State*, 78 S.W.3d 876 (Tenn. 2002), and *Hunter v. Ura*, 163 S.W.3d 686 (Tenn. 2005).

We begin with *Ki v. State*, 78 S.W.3d 876 (Tenn. 2002), a wrongful death case that, while not involving peremptory challenges, appears to lend support to Defendants' argument. In *Ki*, the parents of a student filed a complaint against a university for wrongful death. Both parents were named as plaintiffs in the lawsuit. *Id.* at 878. The Claims Commission eventually ruled in favor of the plaintiffs on the issue of liability. *Id.* Additionally, the Claims Commissioner ruled that each parent constituted a separate "claimant" for purposes of Tennessee Code Annotated section 9-8-307(e)'s damage cap.[5] The Tennessee Supreme Court ultimately reversed the decision of the Claims Commission, holding that

> The plain language of [the wrongful death statute] establishes that in a wrongful death suit only one right of action exists: the action that the decedent would have had, absent death, against the negligent wrongdoer. "Claimant" is defined as "[o]ne who claims or asserts a right, demand, or claim." *Black's Law Dictionary* 247 (6th ed.1990). The decedent is the sole party who holds a right of action or claim in a wrongful death suit. *See Lynn v. City of Jackson*, 63 S.W.3d 332, 336 (Tenn. 2001) (stating that "Tennessee's wrongful death statute does not create a new cause of action for the beneficiaries but instead preserves the right of action of the decedent."). The decedent's survivors are only asserting the decedent's right of action *on behalf of the decedent*. Accordingly, because [the wrongful death statute] creates one claim or right of action vested in the decedent, the decedent is the sole "claimant" in a wrongful death action.

*Id.* at 879–80 (emphasis added). The Supreme Court thereafter rejected the plaintiffs' argument that because the wrongful death statute "creates two separate rights to damages," including the damages owed to the decedent and the loss of consortium damages owed to the next of kin, the wrongful death action must permit "two claimants

---

[4] The Hospital filed its brief apart from the brief filed by Dr. Caruthers and Premier Women's Care. The arguments raised in each brief, however, are generally consistent.

[5] Section 9-8-307(e) limits the State's liability for damages in tort to $300,000 per "claimant" and $1,000,000 per occurrence. *See* Tenn. Code Ann. 9-8-307(e) ("For causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence.").

to exist[.]" As the court explained, the allowance of loss of consortium damages does not create an "individual claim or cause of action . . . [but allows] beneficiaries [to] recover damages for their individual losses that arise pursuant to the right of action *vested in the decedent*." *Id.* at 881 (citing *Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002)) (emphasis added).

Less than three years after the decision in *Ki*, the Tennessee Supreme Court considered a similar question, this time in the context of peremptory challenges. *See Hunter*, 163 S.W.3d at 691. In *Hunter v. Ura*, the widow of the decedent filed what was then known as a medical malpractice action related to the death of her husband. Although the widow was always the only named plaintiff, her complaint was amended to include loss of consortium claims on behalf of herself and her minor children. *Id.* The case eventually proceeded to trial. *Id.* During jury selection, the trial court allowed the plaintiff eight peremptory challenges. In response to the defendants' argument that the trial court erred in this regard, the plaintiff-widow asserted that the additional peremptory challenges were authorized by the peremptory challenge statute then in effect because she was raising loss of consortium claims on behalf of her minor children.[6] *Id.* at 695.

The supreme court rejected the plaintiff's argument, however, concluding that "there is no statutory language upon which to conclude that a plaintiff may receive more than four peremptory challenges in a wrongful death action based on attendant loss of consortium claims." *Id.* Rather, the court noted its previous holding that:

> [T]he statutes permitting an action for the wrongful death of another create "no right of action exist[ing] independently of that which *the deceased* would have had had [he or she] survived." Although the living beneficiaries of the action may seek a limited recovery for their own losses in addition to those of the decedent, the right of action itself remains one that is "single, entire, and indivisible." In point of fact, therefore, "[t]here can be but one cause of action for the wrongful death of another."

*Id.* (quoting *Kline v. Eyrich*, 69 S.W.3d 197, 206–07 (Tenn. 2002) (citations omitted) (emphasis added by the *Hunter* court)). "Because there was only one party plaintiff" in *Hunter*, the Tennessee Supreme Court ruled that the trial court erred in allowing the plaintiff-widow additional peremptory challenges under the peremptory challenge statute then in effect. *Hunter*, 163 S.W.3d at 695. The court held, however, that unlike the situation wherein the trial court prevents a party from exercising all of the peremptory challenges allowed under the law, where a party receives an excessive number of

---

[6] *Hunter* was based upon now-repealed Tennessee Code Annotated section 22-3-105, which we have determined is substantially the same as the peremptory challenge statute at issue in this case. *See supra*, footnote 3.

peremptory challenges, the error does not prejudice the administration of justice and will not result in reversal of the jury verdict absent a showing of actual harm to the objecting party. *Id.* at 696–97 (citing *Tuggle*, 922 S.W.2d at 108).

Immediately following the issuance of the *Hunter* opinion, this Court applied its holding to a case wherein the wrongful death claim was filed by a child's parents as next of kin, likewise holding that the loss of consortium claims filed by the parents did not entitle them to eight peremptory challenges. *McGeehee v. Davis*, No. M2002-03062-COA-R3-CV, 2004 WL 66686, at *3 (Tenn. Ct. App. Jan. 15, 2004) (no perm. app. filed). The Court noted, however, that even if *Hunter* did not apply in this situation, the plaintiffs could not show prejudice "because they failed to utilize the four peremptory challenges they had." *Id.*

Based upon these holdings, Defendants assert that a wrongful death action is filed on behalf of the estate of the decedent, who is the single party for purposes of determining the number of peremptory challenges allowed. *See also **Rogers v. Donelson-Hermitage Chamber of Commerce***, 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990) ("[N]o right of action exists independently of that which the deceased would have had, had she survived."). Although there are some factual differences, as pointed out by Plaintiffs, to the present case, we agree that *Ki* and *Hunter* generally support the action of the trial court here to award Plaintiffs less than eight peremptory challenges.

Recently, however, the Tennessee Supreme Court issued an opinion that appears to have abandoned the foundation of *Ki* and *Hunter* that the claim in a wrongful death action is brought in a representative capacity on behalf of the decedent. *See **Beard v. Branson***, 528 S.W.3d 487 (Tenn. 2017). In *Beard*, the plaintiff surviving spouse of the decedent filed a pro se wrongful death complaint against the defendant medical providers, alleging that the medical providers' negligence resulted in the death of his wife. *Id.* at 490. The defendants thereafter filed a motion to dismiss the complaint, arguing (1) that a wrongful death complaint is filed in a representative capacity on behalf of the decedent; (2) that the surviving spouse as a non-attorney was not entitled to file a complaint in a representative capacity; and (3) that as a result the initial complaint was a nullity and the action was time-barred. *Id.* at 491. The surviving spouse later retained an attorney and filed an amended complaint. The trial court denied the motion, finding that because the surviving spouse was the sole statutory beneficiary of the wrongful death claim, the surviving spouse was representing his own interests in filing the complaint. *Id.* at 491–92.

Discovery ensued, which revealed that the decedent and surviving spouse had two adult daughters, who were also statutory beneficiaries of the wrongful death action. *Id.* at 492. The defendants thereafter filed a motion for summary judgment, again asserting that surviving spouse had no ability to file a pro se wrongful death claim on behalf of either

the estate or the other statutory beneficiaries. *Id.* The trial court again denied the motion, concluding that surviving spouse was partially acting on his own behalf. *Id.* The trial court therefore held that while the surviving spouse's action was improper, it could be cured by amendment, which related back to the filing of the initial complaint. *Id.* The surviving spouse later passed away and one of the daughters was substituted as plaintiff. *Id.* The case proceeded to trial and the jury returned a substantial verdict for the plaintiff. *Id.*

The defendants raised the question of whether the surviving spouse was entitled to file the initial complaint pro se again on appeal to this Court. *See **Beard v. Branson***, No. M2014-01770-COA-R3-CV, 2016 WL 1292904 (Tenn. Ct. App. Mar. 31, 2016), app. granted (Tenn. Sept. 22, 2016), *opinion supplemented on denial of reh'g*, 2016 WL 1705290 (Tenn. Ct. App. Apr. 26, 2016), and *rev'd*, 528 S.W.3d 487 (Tenn. 2017). Relying largely on the language of ***Ki*** that a wrongful death claim is brought "on behalf of the decedent," we held that the surviving spouse "never had 'his own individual claim'" but, rather, asserted the claim "in a representative capacity on behalf of the decedent." *Id.* at *5 (quoting ***Ki***, 78 S.W.3d at 880). Thus, we held that the surviving spouse's action in filing the pro se complaint was a nullity due to the surviving spouse's inability to file a pro se complaint as a representative of the decedent and that the error was not cured by subsequent amendment. *Id.* at *7–*8.

The Tennessee Supreme Court granted the plaintiff's application for permission to appeal and reversed the decision of this Court. In reaching its decision, the court began with a discussion of wrongful death statutes in general, which the court noted typically fall into one of two categories: (1) "true survival statutes[,]" which permit a victim's cause of action to survive the victim's death so that the victim, through the victim's estate, may recover damages; and (2) "purely wrongful death statutes[,]" which "'create a new cause of action in favor of the survivors of the victim for their loss occasioned by the death.'" *Id.* at 497 (quoting ***Jordan v. Baptist Three Rivers Hosp.***, 984 S.W.2d 593, 596–97 (Tenn. 1999)).

To illustrate that Tennessee's "patchwork" of wrongful death statutes constitute "'a hybrid between the survival and wrongful death statutes'" the court considered the language of several statutory provisions. ***Beard***, 528 S.W.3d at 497 (quoting ***Jordan***, 984 S.W.2d at 598). First, Tennessee Code Annotated section 20-5-106 creates the wrongful death cause of action:

> The right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving

spouse, to the person's children or next of kin; to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered or abandoned by them pursuant to any court order removing such person from the custody of such parents or parent; or otherwise to the person's legally adoptive parents or parent, or to the administrator for the use and benefit of the adoptive parents or parent; the funds recovered in either case to be free from the claims of creditors.

Tenn. Code Ann. § 20-5-106(a). Consistent with section 20-5-106(a), Tennessee Code Annotated section 20-5-107(a) provides, in relevant part: "The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin; . . . ." Additionally, Tennessee Code Annotated section 20-5-110 provides that a wrongful death action "may be brought in the name of the surviving spouse for the benefit of the surviving spouse and the children of the deceased, in the name of the administrator of the deceased spouse or in the name of the next of kin of the spouse." Tenn. Code Ann. § 20-5-110(a). "The surviving spouse may effect a bona fide compromise in such a suit or right of action and may execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased." Tenn. Code Ann. § 20-5-110(b). Finally, the court noted that the damages allowed in a wrongful death action include the damages "'resulting to the deceased'" as well as "'resulting to the parties whose use and benefit the right of action survives.'" *Beard*, 528 S.W.3d at 498 (quoting Tenn. Code Ann. § 20-5-113). Thus, Tennessee's wrongful death damages provision has somewhat of a "split personality" in that "statutory beneficiaries may recover both damages suffered by the decedent (like true survival statutes) and also damages suffered by the beneficiaries (like purely wrongful death statutes)." *Beard*, 528 S.W.3d at 498.

Although the court noted its prior pronouncements in *Ki* and the like, the court held that its prior "recognition that the right of action asserted in a wrongful death lawsuit originated in the decedent does not equate to a holding that the surviving spouse is acting as a legal representative for the decedent." *Id.* at 502. Rather than look to prior precedent then, the court held that the answer to this question was found within the plain language of the wrongful death statute. As the court explained:

[D]istilled to its essence, section 20-5-106(a) provides that "[t]he right of action" that the decedent "would have had against the wrongdoer . . . shall not abate . . . but shall pass to the person's surviving spouse." *Id.* Thus, under the statute's plain language, the decedent's right of action that, under the common law, would have extinguished upon his death instead passes to the spouse. The statute does not merely authorize the surviving spouse to

- 10 -

file the wrongful death action on behalf of the decedent; it "passes" or transfers the right of action to the spouse. This indicates that, in filing a wrongful death lawsuit, the surviving spouse does not represent the decedent but instead asserts the spouse's own right of action.

*Id.* at 502. The court further noted that other provisions of the wrongful death "patchwork" supported this interpretation, as, among other things, the proceeds from a wrongful death action pass directly to the statutory beneficiaries, and the action, even when instituted by a personal representative, is asserted on behalf of the beneficiaries, rather than the decedent's estate. *Id.* at 502–03 (citing Tenn. Code Ann. § 20-5-108(b) ("The damages shall go to the surviving spouse and next of kin free from the claims of creditors."); § 20-5-106(a) (listing the personal representative as one who can bring suit "for the benefit of the person's surviving spouse or next of kin")). Based upon this holding, the court ultimately ruled that the pro se complaint was not a nullity despite the fact that the original plaintiff, as surviving spouse, was bringing the action not only on his own behalf but also on behalf of decedent's children, and that it could be amended to add the proper parties. *Id.* at 505–06.

Here, the trial court denied Plaintiffs' request for eight peremptory challenges under Tennessee Code Annotated section 22-3-104 on the basis that "it's really the estate's lawsuit[.]" Likewise, Defendants argue throughout their briefs that under the prior decisions by our supreme court, a wrongful death action is brought on behalf of the decedent. Clearly, however, the Tennessee Supreme Court has rejected that interpretation of our wrongful death statutes. Instead, a wrongful death cause of action is brought by the statutory beneficiaries "on [their] own behalf" rather than on behalf of the decedent. *Id.* at 505. As such, the wrongful death action in this case passed to the statutory beneficiaries as outlined by Tennessee Code Annotated section 20-5-106(a), as set forth above.

Given that the infant obviously had no surviving spouse or issue, there has never been any dispute that the claim was properly brought by both Mother and Father, who constitute both the child's next of kin and natural parents.[7] *See Beard*, 528 S.W.3d at 499–500 (citing ("If there is no surviving spouse, then the children have priority to bring the action; if no children survive, then the action passes to the decedent's next of kin."); *In re Estate of Dobbins*, 987 S.W.2d 30, 36 (Tenn. Ct. App. 1998) ("[T]he right of action of a deceased minor child passes to his/her natural parents or parent or next of kin if that child at the time of death was in the custody of the natural parents or parent, who had maintained their parental rights."); *Mangrum v. Owens*, 917 S.W.2d 244, 245 n.1 (Tenn.

---

[7] Although Mother and Father were not married at the time of the child's birth, there is no dispute that Father is also the child's legal parent, as he executed a voluntary acknowledgement of paternity with regard to the child. *See* Tenn. Code Ann. § 36-1-102(28)(A)(iv) (indicating that a biological father is the legal father where, among other things, he "has signed . . . an unrevoked and sworn acknowledgement of paternity under Tennessee law").

Ct. App. 1995) ("In the law of descent and distribution the term 'next of kin' properly denotes the persons nearest of kindred to the decedent, that is, those who are most nearly related to him by blood. . . . 'Next of kin' is the nearest blood relation of the deceased according to the law of consanguinity. The natural parents of a deceased child are equally the next of kin.") (quoting *In re Estate of Bruce*, No. 2, 1986 WL 654, at *2 (Tenn. Ct. App. Jan. 7, 1986)) (internal citations omitted)).[8] Likewise, Tennessee Code Annotated section 31-2-104 provides that property will pass through intestate succession, "[i]f there is no surviving issue, to the decedent's parent or parents equally[.]" *See also **Beard***, 528 S.W.3d at 499 (holding that wrongful death proceeds "pass to the statutory beneficiaries in accordance with the laws of intestate succession").

Unlike the situation wherein the claim vests in a surviving spouse who has priority to settle the claim over other statutory beneficiaries, the wrongful death statutes do not provide the same type of claim superiority to other types of statutory beneficiaries. *See* Tenn. Code Ann. § 20-5-110(a–b) (stating that a wrongful death claim may be brought in the name of the surviving spouse and "may effect a bona fide compromise in such a suit or right of action and may execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased."); ***Beard***, 528 S.W.3d at 499 (stating that the surviving spouse "has 'the prior and superior right above all others to file the wrongful death action and control the litigation[,]" and the spouse is therefore entitled to control the action, including all questions of settlement). In the absence of similar superiority language regarding next of kin or natural parents, this Court has previously held that section 20-5-106 contains no language giving priority to one parent over another, even where the child lives primarily with one parent. ***Mangrum***, 917 S.W.2d at 245 ("We find nothing in [section] 20-5-106 which suggests that the right of action for the wrongful death of a child belongs to one natural parent over the other."). As such, we have held:

> [T]he statute grants the right of action for the wrongful death of a child to the parents (if both are living and if not to the surviving parent), if, at the time of the child's death, the child was in the custody of both parents or one of the parents and there had been no termination of parental rights by surrender.

*Id.* at 246; *c.f.* ***Jamison v. Memphis Transit Mgmt. Co.***, 381 F.2d 670, 674 (6th Cir. 1967) ("[S]urviving natural parents have a joint right of action, with equal interests therein, as the surviving next of kin of the child."). Given that neither parent has surrendered their rights to the child, the wrongful death action passed to Plaintiffs equally.

---

[8] Although Mother filed her claim both individually and as representative of her child's estate, under ***Beard***, Mother's "own right of action" arises from her individual claim as next of kin and natural parent of the child, rather than her role as administrator of the estate. ***Beard***, 528 S.W.3d at 502.

Because both Mother and Father had an equal right to participate in this action, we must conclude that they constitute separate "party plaintiff[s]" for purposes of determining the number of peremptory challenges due under Tennessee Code Annotated section 22-3-104. Clearly, both were named as plaintiffs and their joint complaint initiated this action. *See Black's Law Dictionary* 1267 (9th ed. 2009) (defining plaintiff). Moreover, under the holding in **Beard**, the wrongful death action "pass[ed] to" **both** Mother and Father as natural parents and next of kin of the infant and was asserted as their "own right of action." **Beard**, 528 S.W.3d at 502, 504; *see also **Flood***, 219 S.W.3d at 314 (defining "party"); **Boles**, 37 Tenn. at 107 (same). Thus, while a wrongful death **claim** may be indivisible, *see **Kline***, 69 S.W.3d at 207, in the absence of statutory language giving one party dominance over another, the **parties** are not one undivided entity proceeding on behalf of the decedent or estate; rather, each asserts the wrongful death claim on their own behalf. **Beard**, 528 S.W.3d at 505. Finally, as previously discussed, the number of peremptory challenges owed under the statute does not depend on whether the plaintiffs have antagonistic interests. As such, the fact that Mother and Father were aligned in this case is simply not relevant to our analysis. *See **Tuggle***, 922 S.W.2d at 107 (holding that antagonistic interests were not required by the plain language of the statute). Rather, under the plain language of section 22-3-104 and the Tennessee Supreme Court's decision in **Beard**, Mother and Father constitute two "party plaintiff[s]" and should have been awarded eight peremptory challenges. The trial court's failure to award the statutorily required challenges was, therefore, in error. *See **Tuggle***, 922 S.W.2d at 108 (holding that the trial court erred in denying the two plaintiffs the mandated number of peremptory challenges).

Based upon the trial court's failure to award the statutorily required number of peremptory challenges, Plaintiffs argue that reversal is proper, citing the Tennessee Supreme Court's decision in **Tuggle v. Allright Parking Systems**. As previously discussed, the Tennessee Supreme Court in **Tuggle** held that the trial court erred in denying the plaintiffs eight peremptory challenges under the peremptory challenge statute in effect at the time. **Id.** at 107. In determining the proper remedy for this error, the court first explained that the Tennessee General Assembly "has the right and power to direct the judicial process. **Id.** at 108. In exercising this power by adopting rules regarding peremptory challenges, the court noted the Legislature's purpose: "to insure uniformity, impartiality, and fairness in jury selection." Finally, the court noted the difficulty that would be encountered by the "individual litigant to prove that a deviation from such procedural rules "more probably than not" affects the judgment in a particular case[.]" **Id.** As such, the court concluded that compliance with the rules regarding peremptory challenges is meant to "protect the integrity of the jury system and safeguard the administration of justice." **Id.** (citing **State v. Coleman**, 865 S.W.2d 455, 458 (Tenn.1993)). Consequently, the Tennessee Supreme Court held that "such deviations from prescribed procedural rules have been held to constitute prejudice to the judicial

process under [Rule] 36(b) [of the Tennessee Rules of Appellate Procedure]."[9] *Tuggle*, 922 S.W.2d at 108 (citing *Coleman*, 865 S.W.2d at 458). The trial court's failure to allow the plaintiffs all of their statutorily mandated peremptory challenges therefore necessitated a new trial. *Tuggle*, 922 S.W.2d at 108 ("In this case, [one plaintiff] was denied the use of his statutorily mandated number of peremptory challenges. In our view, denial of that right, which was designed to safeguard the administration of justice, constitutes prejudice to the judicial process and requires a reversal in this case under [Rule] 36(b)."). In reaching this decision, the *Tuggle* court simply did not consider the absence of an offer of proof as to the jurors that were selected or the jurors that would have been selected had the proper number of peremptory challenges been granted. *Id*

Defendants argue, however, that we should not grant a new trial in this case where Plaintiffs' failed to show any prejudice that resulted from the trial court's failure to allow Plaintiffs' all of the statutorily mandated peremptory challenges.[10] In support, Dr. Caruthers and Premier Women's Care cite a more recent case from the Tennessee Court of Criminal Appeals that they argue "rejected the application of a blanket rule that any deprivation of a peremptory challenge is automatically cause for reversal." *See State v. Taylor*, No. W2012-02535-CCA-R3-CD, 2014 WL 4922629 (Tenn. Crim. App. Sept. 30, 2014), *perm. app. denied* (Tenn. Jan. 16, 2015). In *Taylor*, the Court of Criminal Appeals indeed considered whether the defendant had shown prejudice from the trial court's decision to truncate voir dire, allegedly resulting in the deprivation of two of the defendant's peremptory challenges. *Id.* at \*21–\*22. Ultimately, the court concluded that while the trial court erred in not allowing the defendant to exercise her final two peremptory challenges, the error was not reversible where the trial court was concerned about severe weather and the defendant could not show "any actual prejudice" that resulted from the denial. *Id.* at \*18–\*22. After considering a number of other issues, the court ultimately affirmed the defendant's conviction. *Id.* at \*66.[11]

Unreported cases of the intermediate courts are not binding on this Court. *See* Tenn. R. Sup. Ct. 4(G)(1) (noting that unpublished opinions are considered persuasive authority except as between the parties to the case). Additionally, we need not read the

---

[9] Rule 36(b) provides: "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

[10] Although this argument is mentioned in the briefs of both the Hospital and Dr. Caruthers/Premier Women's Care, the argument contained in the Hospital's brief states nothing more on this issue than the following: "Also, [Plaintiffs] have shown no prejudice." Respectfully, the lack of legal argument addressing this contention by the Hospital would generally result in a waiver on appeal. The issue is fully addressed, however, by Dr. Caruthers and Premier Women's Care.

[11] Dr. Caruthers and Premier Women's Care also cite this Court's Opinion in *Walker v. Jackson*, No. 01-A-019203-CV-00117, 1992 WL 172396, at \*3 (Tenn. Ct. App. July 24, 1992). *Walker*, however, was decided prior to the Tennessee Supreme Court's decision in *Tuggle*.

Tennessee Supreme Court's decision to deny permission to appeal in *Taylor* as approval of all of the analysis therein. *See Swift v. Kirby*, 737 S.W.2d 271, 277 (Tenn. 1987) ("This Court is not committed to all of the views expressed in an opinion of the intermediate appellate courts when we deny discretionary review[.]"); *c.f. Evans v. Steelman*, No. 01-A-01-9511-JV00508, 1996 WL 557844, at *2 (Tenn. Ct. App. Oct. 2, 1996), *aff'd*, 970 S.W.2d 431 (Tenn. 1998) (holding that where a case decides only a single issue and permission to appeal is denied, there can be no argument that the supreme court did not approve the interpretation made by the intermediate court). Even more importantly, intermediate courts are not free to depart from the Tennessee Supreme Court's unequivocal holdings. "The Court of Appeals has no authority to overrule or modify Supreme Court's opinions." *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Overton*, 54 Tenn.App., 419, 392 S.W.2d 86 (Tenn. 1964)); *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976). As such, "[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." *Morris v. Grusin*, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009) (quoting *Davis v. Davis*, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004)); *see also Thompson v. State*, 958 S.W.2d 156, 173 (Tenn. Crim. App. 1997) ("[I]t is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process.") (quoting *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995)); *Levitan v. Banniza*, 34 Tenn. App. 176, 185, 236 S.W.2d 90, 95 (Tenn. Ct. App. 1950) ("This court is bound by the decisions of the Supreme Court.").

Finally, we note that following the decision in *Taylor*, the Tennessee Supreme Court clarified the two types of prejudice that may be shown in order to invalidate a jury verdict on the basis of "deviations from prescribed jury selection procedures." *State v. Frausto*, 463 S.W.3d 469, 484 (Tenn. 2015). In this situation, "Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment **or** would result in prejudice to the judicial process.'" *Id.* (quoting *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008)) (emphasis added); *see also* Tenn. R. App. P. 36(b). In support, the court noted that "'strict adherence to statutory jury selection procedures is essential to the integrity of the judicial process and the instilling of public confidence in the administration of justice.'" *Frausto*, 463 S.W.3d at 485 (quoting *State v. Lynn*, 924 S.W.2d 892, 898 (Tenn.1996)). Thus, even in the absence of "actual prejudice" likely affecting the judgment, a jury verdict may still be invalidated if it "would result in prejudice to the judicial process." *Frausto*, 463 S.W.3d at 484. The court noted, however, that prejudice to the judicial process would not typically result when the errors were "'minor' or 'inadvertent' deviations or deviations that were 'necessitated by circumstances beyond [a] trial court's control.'" *Frausto*, 463 S.W.3d 485 (quoting *State v. Bondurant*, 4 S.W.3d 662, 670 (Tenn. 1999)). Because the *Frausto* court concluded that the trial court utilized a jury procedure that was not in accordance with the Rules of Criminal Procedure

and that the procedure prevented the defendant from intelligently exercising his peremptory challenges, the Tennessee Supreme Court held that the defendant had shown prejudice to the judicial process sufficient to necessitate a new trial. ***Frausto***, 463 S.W.3d at 486–87.

The same is true in this case. Here, Plaintiffs sought and were denied the eight peremptory challenges they were due under Tennessee Code Annotated section 22-3-104(b). Plaintiffs used all six of the peremptory challenges awarded by the trial court and suggested on a form that they would have used additional peremptory challenges had the trial court not denied them of the challenges due under the statute. The Tennessee Supreme Court in ***Tuggle*** has unequivocally held that a trial court's failure in a civil case to allow plaintiffs to exercise all of the peremptory challenges granted under our peremptory challenge statute constitutes prejudice to the judicial process. *See **Tuggle***, 922 S.W.2d at 108. Defendants have not cited nor has our research revealed any Tennessee Supreme Court cases in which ***Tuggle*** was overruled or its holding in this context called into question.[12] Furthermore, the trial court's error in this case was neither minor, inadvertent, nor necessitated by the circumstances, unlike the truncated voir dire that occurred in ***Taylor***. *See **Taylor***, 2014 WL 4922629, at *18 (noting that the trial court's decision rested in part on worsening weather). Under these circumstances, we must conclude that the trial court's failure to allow Plaintiffs to exercise all eight of the peremptory challenges granted to them under Tennessee Code Annotated section 22-3-104(b) constitutes prejudice to the judicial process that necessitates a new trial.

In conclusion, the trial court erred in denying Plaintiffs eight peremptory challenges under Tennessee Code Annotated section 22-3-104(b). Based upon the Tennessee Supreme Court's decision in ***Tuggle,*** the trial court's error resulted in prejudice to the judicial process, for which a new trial is warranted. "[W]hen presented with multiple issues on appeal, one of which is dispositive, we have consistently found the remaining issues to be pretermitted." ***In re Jamie B.***, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *7 (Tenn. Ct. App. June 30, 2017) (citing ***State v. Mellon***, 118 S.W.3d 340, 348 (Tenn. 2003) ("Because the issue of the knowing and voluntary nature of the pleas [of the criminal defendant] is dispositive, the other numerous issues raised on appeal are pretermitted.")); *see also **Alexander v. Inman***, 903 S.W.2d 686, 705 (Tenn. Ct. App. 1995) (pretermitting issues on the basis of the grant of a new trial). As such, any questions concerning the Hospital's use of an alleged racially motivated peremptory challenge or the trial court's exclusion of the "home video" are pretermitted.

---

[12] As previously discussed, in ***Hunter v. Ura***, 163 S.W.3d 686 (Tenn. 2005), the Tennessee Supreme Court held that the trial court's decision to award a party more than the statutorily mandated number of peremptory challenges did not constitute prejudice to the judicial process. *Id.* at 697. The ***Hunter*** decision, however, did not overturn the holding in ***Tuggle*** where a party was "*denied* the statutorily-mandated number of peremptory challenges under Tennessee Code Annotated section 22–3–105(a) and (b)[.]" *Id.* (emphasis in original).

**CONCLUSION**

The judgment of the Circuit Court of Tipton County is reversed and this cause is remanded for a new trial. Costs of this appeal are taxed to Defendants, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE