FILED
03/05/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2019

## JANET C. FLEMING v. CITY OF MEMPHIS

**Appeal from the Circuit Court for Shelby County**
**No. CT-004846-10     Robert Samual Weiss, Judge**

_____

### No. W2018-00984-COA-R3-CV

_____

This appeal concerns whether the public duty doctrine, which immunizes public employees and governmental entities from liability when their duty is owed to the general public rather than any particular individual, survived the 1973 enactment of the Governmental Tort Liability Act ("The GTLA"). While walking in Memphis, Janet C. Fleming ("Plaintiff") was bitten by a pit bull. Plaintiff sued the City of Memphis ("Defendant") in the Circuit Court for Shelby County ("the Trial Court") alleging that Defendant knew of the dog's violent tendencies from prior incidents and should have taken stronger preventative action. Defendant filed a motion for summary judgment asserting the public duty doctrine. The Trial Court granted the motion. Plaintiff appeals, arguing that the GTLA supersedes the public duty doctrine despite the fact that our Supreme Court has held otherwise in a never-overturned opinion. Constrained to adhere to our Supreme Court's binding precedent, we hold that the public duty doctrine was not superseded by the GTLA. We hold further that while the GTLA does not provide immunity to Defendant, the public duty doctrine does because Defendant's duty was to the public at large and Plaintiff has not established a special duty exception. We, therefore, affirm the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Jason J. Yasinsky and David A. Siegel, Memphis, Tennessee, for the appellant, Janet C. Fleming.

Bruce McMullen, City Attorney; and, Sharon L. Petty, Senior Assistant City Attorney, for the appellee, the City of Memphis.

# OPINION

## Background

On March 20, 2010, Plaintiff went for a walk along Raleigh-LaGrange Road in Memphis not far from where she lived. A pit bull named Diesel broke loose from where he was chained to a tree and attacked Plaintiff. Badly mauled, Plaintiff was rushed to the hospital with injuries to her legs. Diesel subsequently was removed from his owner and quarantined.

In September 2010, Plaintiff sued Defendant in the Trial Court.[1] Plaintiff alleged, in part, the following: "As a direct and proximate result of the Defendants' negligence, gross negligence, willful, wanton and reckless behavior, Plaintiff, Janet Fleming, suffered excruciating pain and suffering, personal injury, permanent scarring, fright and shock, mental anguish and inability to enjoy the normal pleasures of life." According to Plaintiff's complaint, Defendant "had actual prior notice of this dog's vicious propensities." Defendant filed an answer asserting the public duty doctrine as a defense.

In September 2015, Defendant filed a motion for summary judgment. In its supporting memorandum, Defendant again asserted the public duty doctrine and stated that "[i]f a duty to issue a citation existed, it existed to the 'public at large', not to Ms. Fleming specifically." In her response, Plaintiff argued that the GTLA superseded the public duty doctrine and that, even if the public duty doctrine survived, it would not apply in Plaintiff's case because she was a foreseeable plaintiff.

In December 2015, the Trial Court heard Defendant's motion for summary judgment. In January 2016, the Trial Court entered its order granting summary judgment in favor of Defendant. The Trial Court found and held, in relevant part:

> 1. The Plaintiff, Janet Fleming was attacked by a pit bull (Diesel) while taking her regular walk along Raleigh-Lagrange Rd on March 20, 2010[.]
> 2. The dog was owned by Stephen Thornton and in the care and under the control of Samuel Thornton.
> 3[.] On June 12, 2007, a one month old pit bull named Diesel bit a child on the stomach while the child was playing with the dog. The owner of the dog at that time was Stacey Powers. After required quarantine, Diesel was returned to Ms Powers.

---

[1] Plaintiff also sued Samuel Thornton, Stephen Thornton, and Samuel Thornton d/b/a Thornton AC & Heating, but later dismissed them voluntarily. Only Defendant remains.

4. [A.I.], age 14, was attacked and bitten on his right thigh by a pit bull named Diesel after Defendant, Samuel Thornton let the dog off his chain[.] The animal was quarantined at the Memphis Animal Shelter from March 6, 2010 to March 17, 2010[.]

5. Based upon the information received from police, the animal control worker, David Johnson, did not believe there were grounds upon which supported seeking a petition to declare the dog dangerous and vicious under City ordinance[.]

6. On March 20, 2010, according to police report, Diesel broke its collar and attacked Ms. Fleming. Samuel Thornton was issued a citation by animal control and the dog was taken to the Memphis Animal Shelter.

\*\*\*

8. The Tennessee Governmental Tort Liability Act (hereinafter, "GTLA"), Tenn. Code Ann § 29-2-101 et. seq., removes that immunity for injuries arising from certain types of acts by public officers and employees, but retains it for others

9. Tenn. Code Ann. § 29-20-205 reads in pertinent part[:]
Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of
(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

10. In other words, local governments retain legal immunity for negligent acts or omissions of their employees which lead to injury, if those acts or omissions involved the performance of a discretionary function[.]

\*\*\*

12. In *Bowers*, the Supreme Court noted that it had previously defined discretionary functions on the basis of a distinction between ministerial functions, where the governmental officer's duty is "absolute, certain and imperative," and all the other functions where some degree of judgment, and therefore of discretion, is involved.

13[.] The court declared that the discretionary/ministerial distinction was imprecise and likely to lead to inconsistent results, and it substituted in its place an analysis which distinguishes between those acts performed at

the planning level and those performed at the operational level[.]  *Id*[.] at 430-431[.]

***

16. In the case a[t] bar, the animal control officer, David Johnson, was required to exercise his discretion in how to deal with the pit bull following the attack on Mr. [I.], but that did not transform the nature [of] his actions from operational to discretionary.

17. Therefore, the City of Memphis was not rendered immune from liability under the GTLA.

18. Just because a governmental entity is not rendered immune under the GTLA, that does not prevent such a defendant from invoking the public duty doctrine, another possible source of immunity in appropriate cases, nor does it excuse a plaintiff from having to establish all the elements of a claim before he or she can prevail.

19. The public duty doctrine is a common law defense which shields public employees from suits for injuries that are caused by the employee's breach of a duty owed to the public at large rather than to the individual plaintiff, and it likewise shields local governmental entities from such liability. *Ezell v Cockrell*, 902 S[.] W[.] 2d at 397 (Tenn. 1995)[.]

***

21. In *Ezell v Cockrell*, our Supreme Court recognized an exception to the immunity enjoyed by local governmental entities under the public duty doctrine, which arises where a special relationship between the plaintiff and the public employee creates a special duty which is more specific to the plaintiff than the duty owed by the employee to the public at large[.] *Ezell*, 902 S.W.2d at 401.

22. The court, in *Ezell*, noted that while the Special Duty Exception was recognized by most jurisdictions applying the public duty doctrine, its application varied from jurisdiction to jurisdiction.  After discussing various formulations, the court concluded that,

> ... a special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to

-4-

enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct[.] *Id.* at 402.

23. In the case at bar, no special duty exists, the duty that was owed to Ms. Fleming was the same duty that was owed to the general public.

24. Ms. Fleming being in the neighborhood does not rise to the level of a special class such that a special duty of care would apply.

In May 2018, the Trial Court entered an order of voluntary dismissal without prejudice with respect to the other defendants in the case. Plaintiff timely appealed to this Court.

## **Discussion**

We restate and consolidate the issues Plaintiff raises on appeal into the following two dispositive issues: 1) whether the GTLA supersedes the public duty doctrine; and, 2) if the public duty doctrine survives, whether the Trial Court erred in finding that it applies in the instant case.

This case was decided by means of summary judgment. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> ***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving

party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the GTLA supersedes the public duty doctrine. In her appellate brief, Plaintiff asserts that "[t]he GTLA controls tort immunities with respect to all governmental entities, and the Public Duty Doctrine was either implicitly or effectively abolished by the enactment of the GTLA." Elsewhere in her brief, Plaintiff

argues further that "the application of the Public Duty Doctrine constitutes an impermissible violation of the separation of powers doctrine because it encroaches on what can only be described as the plain intent of our legislature when it passed the GTLA and removed immunities in all instances except those specifically defined in the act . . . ."

As Plaintiff acknowledges, however, this question does not cover new ground. The fate of the public duty doctrine post enactment of the GTLA was addressed nearly 25 years ago by our Supreme Court in *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995). Holding that the public duty doctrine lives on, our Supreme Court stated in pertinent part:

> The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large. Kelly M. Tullier, *Governmental Liability for Negligent Failure to Detain Drunk Drivers*, 77 Cornell L.Rev. 873, 886 (1992). The doctrine can be traced to the United States Supreme Court's decision in *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855), which held that a sheriff is not liable for failing to protect a kidnap victim because the sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." *Id.* at 403.

> ***

> Although, as the plaintiff points out, the Legislature has waived immunity in the Act for some activities that were protected at common law by the public duty doctrine, many of the governmental activities traditionally shielded by the public duty doctrine are expressly excepted from the limited waiver of immunity for negligent acts or omissions of governmental employees, under which the plaintiff brought this lawsuit. *See* Tenn. Code Ann. § 29-20-205(1) (exercise or performance of a discretionary function); –205(3) (issuance of licenses); –205(4) (failure to inspect); –205(7) (civil unrest); and –205(8) (tax collection). Accordingly, we are not persuaded that the Tennessee Governmental Tort Liability Act, which actually reiterates and extends the rule of governmental immunity, abolished, or was intended to abolish, the longstanding common-law public duty doctrine.

> Moreover, we are in agreement with the courts which have identified valid policy considerations which warrant continued judicial application of the public duty doctrine. We conclude that the doctrine serves the important purpose of preventing excessive court intervention into the

-7-

governmental process by protecting the exercise of law enforcement discretion. As we observed in *State v. Jefferson*, 529 S.W.2d 674, 689 (Tenn. 1975), "[i]t is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws...." *See also, Barratt v. Burlingham*, 492 A.2d at 1222; *Ashburn v. Anne Arundel County*, 510 A.2d at 1084; *Fessler by Fessler v. R.E.J., Inc.*, 514 N.E.2d at 522; *see generally*, 38 A.L.R.4th at § 3, 1197-1202. Finally, public forms of redress, other than civil actions, exist in Tennessee, as in most other states, to insure that officers who fail to faithfully perform their duties are accountable. Internal disciplinary policies, criminal sanctions, and in the case of publicly elected law enforcement officials, ouster proceedings, are alternative forms of redress. *See* Tenn. Code Ann. § 38-8-301 to § 38-8-309 (1991); Tenn. Code Ann. § 39-16-401 to § 39-16-406 (1991); Tenn. Code Ann. § 8-47-101 to § 8-47-126 (1993). We think that on balance, the State is better served by a policy that both protects the exercise of law enforcement discretion and provides accountability for failure to perform a duty.

*Ezell*, 902 S.W.2d at 397, 400-01 (footnotes omitted).

Plaintiff argues that *Ezell* was decided wrongly. However, even if that is so, there is nothing this Court can do about it. We are an intermediate appellate court, and the Tennessee Supreme Court has the final word on Tennessee law. On the matter of our duty to abide higher court precedents, we have stated thusly:

Even more importantly, intermediate courts are not free to depart from the Tennessee Supreme Court's unequivocal holdings. "The Court of Appeals has no authority to overrule or modify Supreme Court's opinions." *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Overton*, 54 Tenn.App., 419, 392 S.W.2d 86 (Tenn. 1964) ); *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976). As such, "[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." *Morris v. Grusin*, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009) (quoting *Davis v. Davis*, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004) ); *see also Thompson v. State*, 958 S.W.2d 156, 173 (Tenn. Crim. App. 1997) ("[I]t is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process.") (quoting *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995) ); *Levitan v. Banniza*, 34

Tenn. App. 176, 185, 236 S.W.2d 90, 95 (Tenn. Ct. App. 1950) ("This court is bound by the decisions of the Supreme Court.").

*O'Dneal v. Baptist Memorial Hospital-Tipton*, 556 S.W.3d 759, 772-73 (Tenn. Ct. App. Feb. 6, 2018).

We are not at liberty to depart from binding Supreme Court precedent. If the public duty doctrine's existence post enactment of the GTLA is to be judicially revisited, it must be done by our Supreme Court, not us.

Plaintiff goes further still to argue what we can only interpret to mean that the Supreme Court's decision in *Ezell* itself was unconstitutional for its alleged usurpation of the legislative power. Again, our courts have a hierarchical structure. Just as we may not depart from binding Supreme Court precedent, we likewise have no authority or power to declare an opinion of our Supreme Court unconstitutional.

Having determined that the public duty doctrine still exists, we next address Plaintiff's alternative issue of whether the Trial Court erred in finding that the public duty doctrine applies in the instant case. According to Plaintiff, even if the public duty doctrine survives, it does not apply in this case because Defendant was on notice of the dog's propensities and should have foreseen an incident occurring such as what happened to her. Plaintiff states "[i]f this doctrine were interpreted as requiring the actual plaintiff, by name, to be known to the public official as a condition precedent to the imposition of liability, there would be virtually no GTLA case that could ever survive a summary judgment proceeding, because . . . all government employees, by definition, act for the public at large in the constituency through which they serve."

Respectfully, Plaintiff's concerns about the public duty doctrine rendering the GTLA hollow are somewhat unfounded. Plaintiff is correct that under *Ezell* a percentage, perhaps even a significant percentage, of cases brought against governmental entities that would survive under the GTLA will be dismissed under the public duty doctrine. Not every case involving a public employee or governmental entity necessarily is predicated on the existence of a duty to the public at large. The entire basis of Plaintiff's claim rests on Defendant having had a duty to protect citizens from dangerous animals. Under Plaintiff's theory, the animal control officials were bound to act because of their public duty and not because they owned the dog in question or somehow had a personal responsibility to keep it confined. Our Supreme Court has discussed application of the public duty doctrine in the context of the GTLA as follows:

> Both the GTLA and the public duty doctrine are affirmative defenses. Courts first look to the GTLA. If immunity is found under the

-9-

GTLA, a court need not inquire as to whether the public duty doctrine also provides immunity. If, however, the GTLA does not provide immunity, courts may look to the general rule of immunity under the public duty doctrine. If immunity is then found under the public duty doctrine, the next inquiry is whether the special duty exception removes the immunity afforded under the public duty doctrine.

*Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998).

Although it is undisputed that the GTLA provides no immunity to Defendant here, Defendant asserted the public duty doctrine as a defense. The doctrine protects governmental entities like Defendant as well as public employees. *See Ramsey v. Cocke County*, No. E2016-02145-COA-R3-CV, 2017 WL 2713213, at *7 (Tenn. Ct. App. June 23, 2017), *Rule 11 appl. perm. appeal denied Nov. 17, 2017*. As the alleged tortious failure to act in this case necessarily constitutes a failure to observe a duty to the public at large for the reasons discussed above, we find the public duty doctrine applies.

The final stage of the analysis is to determine whether a special duty exception exists to negate the public duty doctrine. *Ezell* formulated three categories of special duty exception:

> 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Ezell*, 902 S.W.2d at 402.

Plaintiff, however, makes no effort to establish how her case fits into one of the three types of special duty exception to the public duty doctrine. While Plaintiff alleged in her complaint that Defendant's conduct was reckless, which would fit into category 3), she abandoned that position on appeal and argues only that if the public duty doctrine still exists at all it should not apply here because she was a foreseeable plaintiff. Foreseeability, while a factor in every negligence case, is not one of the valid special duty exceptions. We will not attempt to find a special duty exception where none has been argued. "It is not the responsibility of Tennessee's appellate courts to research or construct the parties' arguments for them." *State v. Hester*, 324 S.W.3d 1, 80 (Tenn. 2010).

-10-

The attack on Plaintiff was truly unfortunate and serious. Nevertheless, our Supreme Court in *Ezell* made clear that governmental entities may assert the public duty doctrine in those instances where their employee's conduct involves a duty to the public at large. Plaintiff has staked her appeal on our somehow departing from *Ezell*. Only our Supreme Court can do that. Defendant made a properly supported motion for summary judgment relying upon the public duty doctrine and is entitled to judgment as a matter of law. We affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Janet C. Fleming, and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE